990 P.2d 689

David KESSEN & Carolyn Kessen,
husband and wife, dba Kessen &
Kessen, Petitioner Employer,

v.

Lynn STEWART, Respondent Employee,

The Industrial Commission of
Arizona, Respondent,

No Insurance Section/Special Fund
Division, Respondent Party in
Interest.

No. 1 CA–IC 98–0040.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 26, 1999.

As Amended Sept. 9, 1999.

Dennis R. Kurth, P.C. by Dennis R. Kurth, Phoenix, Attorneys for Petitioner Employer.

Day, Kavanaugh & Blommel, P.C. by Sandra A. Day, Mesa, Attorneys for Respondent Employee/Cross–Petitioner Employee.

The Industrial Commission Of Arizona, Anita R. Valainis, Chief Counsel, Phoenix, Attorney for Respondent.

The Industrial Commission Of Arizona No Insurance Section/Special Fund Division by Paula R. Eaton, Phoenix, Attorney for Respondent Party in Interest.

## OPINION

BERCH, Judge.

¶ 1 The Kessens, Claimant Lynn Stewart's uninsured employer, seek special action review of the Industrial Commission of Arizona's ("ICA") affirmance of the lump-sum commutation of Claimant's workers' compensation award. The Kessens assert that, as Claimant's employer, their consent was required before the ICA could commute Claimant's award of unscheduled permanent partial disability benefits to a lump sum. We hold that it was not. On cross-petition, Claimant challenges the ICA's reduction of the lump-sum award by subtracting the monthly disability payments made to him after he submitted his lump-sum request. We hold that Claimant failed to preserve this issue for review. Accordingly, we affirm the ICA's award approving the lump-sum commutation.

## BACKGROUND

¶ 2 On August 6, 1993, Claimant injured his back while working for the Kessens' rock-crushing business in Globe, Arizona. Because the Kessens did not have workers' compensation insurance for the period in which Claimant's injury occurred, the claim was handled by the ICA's No Insurance Section/Special Fund Division ("Special Fund"). The claim was eventually closed with a five percent unscheduled permanent impairment, entitling Claimant to $404.29 per month in unscheduled disability payments.

¶ 3 On October 3, 1997, Claimant requested a "lump-sum commutation" of his unscheduled award—that is, he requested a lump-sum payment in lieu of further monthly payments. The ICA granted the request and, because the $79,000 present value of Claimant's future disability payments exceeded the statutory cap, awarded Claimant the statutory maximum of $50,000, less any payments received after the request was made. *See* Ariz.Rev.Stat. Ann. ("A.R.S.") § 23-1067(B) (1995). The Kessens timely protested. After considering the parties' legal memoranda, the ICA affirmed the lump-sum commutation. The Kessens then brought this special action. Claimant cross-petitioned, claiming that the ICA was erroneously deducting his monthly payments from his $50,000 award.

## DISCUSSION

### A. Uninsured Employer's Consent

¶ 4 The Kessens argue that the ICA erred by failing to obtain their consent to the Claimant's request for a lump-sum commutation. By statute, the consent of the "carrier liable to pay the claim" must be obtained before a lump-sum commutation may be awarded:

> The [ICA] may allow commutation of compensation pursuant to § 23-1044, subsection C, and 23-1045, subsections B, C, and D, to a lump sum of not to exceed ... fifty thousand dollars for commutation requests made from and after June 30, 1987, *with the consent of the carrier liable to pay the claim,* under such rules, regulations and system of computation as it devises for obtaining the present value of the compensation.

A.R.S. § 23-1067(B) (emphasis added).

¶ 5 The Kessens assert that section 23-1067(B) requires the consent even of an uninsured employer before the ICA may approve a request for a lump-sum commutation because, by statute, an uninsured employer is liable to reimburse the Special Fund for benefit payments made on the employers behalf. *See* A.R.S. § 23-907(C) (Supp.1998). They argue that a contrary interpretation would frustrate the legislature's intent and would violate due process and equal protection principles. We disagree.

¶ 6 Our primary goal when interpreting a statute is to give effect to the legislature's intent. *See State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990); *Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). Statutory language is the

best indicator of that intent and we will give terms "their ordinary meanings, unless the legislature has provided a specific definition or the context of the statute indicates a term carries a special meaning." *Wells Fargo Credit Corp. v. Tolliver,* 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995). If uncertainty exists as to the meaning of a term, we will employ other means of statutory interpretation, such as "the context of the statute and its historical background, subject matter, effects, consequences and purpose." *Alaface v. National Inv. Co.,* 181 Ariz. 586, 592, 892 P.2d 1375, 1381 (App.1994); *see also Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994); *Korzep,* 165 Ariz. at 493, 799 P.2d at 834.

¶ 7 "Insurance carrier" is defined in the workers' compensation statutes as "the state compensation fund and every insurance carrier duly authorized by the director of insurance to write workers' compensation ... insurance in the state of Arizona." A.R.S. § 23–901(8) (1995). This definition does not encompass an uninsured employer such as the Kessens. Thus, as the Kessen's acknowledge in their opening brief, if we apply the statutory definition of "insurance carrier" to section 23–1067(B), our inquiry is finished; the legislature plainly excluded uninsured employers from the ambit of the statute.

¶ 8 Such an analysis is problematic, however, for as the Kessens observe the definition of "insurance carrier" in section 23–901(8) also does not include either the Special Fund or self-insured employers. *See* A.R.S. § 23–961(A)(2) (Supp.1998); *see also Spear v. Industrial Comm'n,* 114 Ariz. 601, 605–06 & n. 3, 562 P.2d 1099, 1103–04 & n. 3 (App.1977) (Special Fund is not an "insurance carrier" for purposes of § 23–1061(M)). An interpretation that excludes these entities from section 23–1067(B), however, would not comport with the intended goal of the statute: to grant a say to those entities immediately affected by a lump-sum commutation. We therefore agree with the Kessens that, for purposes of section 23–1067(B), the term "carrier" is subject to a broader interpretation than that presented by the statutory definition of "insurance carrier" in section 23–901(8).

¶ 9 Given the uncertain scope of the term "carrier" as used in section 23–1067(B), the Kessens assert that the key to interpreting to whom the legislature intended to grant a veto power lies in the phrase "liable to pay the claim." They argue that, because the uninsured employer is liable to reimburse the Special Fund for all benefits paid on the employer's behalf, plus a ten percent penalty, *see* A.R.S. § 23–907(C), the uninsured employer is "liable to pay the claim" within the meaning of section 23–1067(B).

¶ 10 We agree with the Kessens that an uninsured employer is "liable to pay"— that is, the uninsured employer is ultimately responsible for reimbursing the Special Fund for benefits it pays a claimant on the uninsured employer's behalf. *See id.* However, we think the Kessens have parsed the statute too finely. We cannot interpret "liable to pay" in a vacuum; instead, we must examine the phrase "carrier liable to pay the claim" as a whole. In doing so, we conclude that the sum of the entire phrase is greater than that of its parts, and the legislature intended to grant a veto power only to the entity *directly* liable for *the claim,* as opposed to an entity *secondarily* liable to *the Special Fund.*

¶ 11 This court recently addressed a similar argument. In *Bohn v. Industrial Commission,* 194 Ariz. 479, 984 P.2d 565 (App. 1999), we interpreted an Arizona workers' compensation statute that requires an employee to obtain approval from the "compensation fund, or ... *the person liable to pay the claim* " before settling a third-party civil claim for less than the benefits provided. A.R.S. § 23–1023(C) (1995) (emphasis added). The court rejected the claimant's argument that he satisfied section 23–1023(C) by obtaining the consent of his uninsured employer:

> Although an uninsured employer is liable to the Special Fund, the Special Fund may never recover the workers' compensation it paid a claimant. Consequently, the Special Fund, not an uninsured employer, is the "other person liable to pay the [workers' compensation] claim" under A.R.S. section 23–1023(C).

**492**

*Bohn,* 194 Ariz. at 485 ¶ 32, 984 P.2d at 571 ¶ 32.

¶ 12 The same reasoning applies here. That the uninsured employer is ultimately responsible to reimburse the Special Fund for payments it has made on the employer's behalf does not grant the uninsured employer the veto power reserved for the entity presently liable to pay the claim. *See* A.R.S. § 23–1067(B).

¶ 13 We are further aided in our analysis by the legislature's express desire to exclude uninsured employers from the protections granted other interested parties under the workers' compensation statutes: "Employers who are subject to and who fail to comply with the provisions of § 23–961 or 23–962 shall not be entitled to the benefits of this chapter [A.R.S. §§ 23–901 to 23–1091] . . . ." A.R.S. § 23–907(A) (Supp.1998). Accordingly, we conclude that section 23–1067(B) does not require the consent of an uninsured employer before the ICA may approve an employee's lump-sum commutation request.

¶ 14 The Kessens further argue that such a construction of section 23–1067(B) violates equal protection by unreasonably treating uninsured employers differently from self-insured employers for the purpose of approving or vetoing lump-sum commutations. We agree that the two classes are treated differently, but disagree that the differing treatment violates equal protection.

¶ 15 The equal protection clause is satisfied if "all persons within a class are treated alike, and . . . reasonable grounds for the classification exist."[1] *Hart v. Industrial Comm'n,* 180 Ariz. 307, 310, 884 P.2d 193, 196 (App.1994); *see also Findley v. Industrial Comm'n,* 135 Ariz. 273, 276, 660 P.2d 874, 877 (App.1983). One reasonable basis supporting the disparate treatment is that, unlike insured employers, uninsured employers have violated the Arizona law that requires employers to carry workers' compensation insurance to protect their employees. *See* A.R.S. § 23–961(A); *Hart,* 180 Ariz. at 311, 884 P.2d at 197 (rejecting argument that giving uninsured employer a shorter period in which to request a hearing violated equal protection). Even more significant, unlike self-insured employers, uninsured employers have not demonstrated their ability to pay potential claims. *See* A.R.S. § 23–961(A)(2). We thus conclude that a rational basis exists for the disparate treatment and that section 23–1067(B) does not violate equal protection.

¶ 16 The Kessens also argue that the lump-sum commutation statute infringes their fundamental right not to be deprived of their property without due process of law. "It is axiomatic that no person may be deprived of life, liberty, or property without due process of law." *Iphaar v. Industrial Comm'n,* 171 Ariz. 423, 426, 831 P.2d 422, 425 (App.1992). Procedural due process, however, requires nothing more than an adequate opportunity to fully present factual and legal claims. *See Hart,* 180 Ariz. at 311, 884 P.2d at 197 (procedural due process requires "notice and an opportunity to be heard"); *Jalifi v. Industrial Comm'n,* 132 Ariz. 233, 236, 644 P.2d 1319, 1322 (App.1982).

¶ 17 The Kessens were afforded such an opportunity; their claim that they did not receive notice of or an opportunity to be heard on the claimant's lump-sum commutation request is inaccurate. Although they were not given a veto power over Claimant's lump-sum commutation request, they were served with a copy of the ICA's November 13, 1997 Special Findings and Award, which granted the lump-sum commutation request and delineated the parties' right to request a hearing. The Kessens timely protested the lump-sum commutation and requested a hearing. Their attorney subsequently waived a hearing and submitted a legal memorandum addressing the legal question at

---

1. Assuming, of course, that no fundamental right or suspect class is involved, in which case we would review under a strict scrutiny analysis. *See Kenyon v. Hammer,* 142 Ariz. 69, 79, 688 P.2d 961, 971 (1984). Although the Kessens imply that a fundamental right may be involved in this case, they do not develop this argument in their briefs, nor do we believe that control over an employee's lump-sum commutation involves a fundamental right. *Cf. Smith v. Myers,* 181 Ariz. 11, 17–18, 887 P.2d 541, 547–48 (1994) (holding "payment plan statutes" unconstitutional because of constitutional guarantee against limiting damages in tort cases).

issue. We conclude that the Kessens received all the process they were due with regard to the claimant's lump-sum commutation request.

### B. Cross–Petition

■■■■ ¶ 18 In his cross-petition, Claimant argues that the ICA is erroneously reducing his lump-sum award by subtracting from it the monthly disability payments made to him after he filed his request for a lump-sum commutation.[2] He argues that the reduction exceeds the ICA's statutory authority and constitutes a rule not properly promulgated pursuant to the Administrative Procedure Act. *See* A.R.S. §§ 41–0001 to 41–1092.12 (1999). Claimant, however, failed to raise this issue before the ICA, and we will not consider it now.

■■■■ ¶ 19 Generally, this court will not consider on appeal an issue that was not raised before the ICA. *See Norsworthy v. Industrial Comm'n*, 24 Ariz.App. 73, 74, 535 P.2d 1304, 1305 (1975). This rule stems from the requirement that a party must exhaust administrative remedies before seeking judicial review, *see Larson v. Industrial Comm'n*, 114 Ariz. 155, 158, 559 P.2d 1070, 1073 (App.1977), and develop the factual record before the agency. *See Phoenix Children's Hosp. v. AHCCCS*, 195 Ariz. 277, ¶¶ 17–18, 987 P.2d 763, ¶¶ 17–18 (App.1999). We assume that, "if given a complete chance to pass upon the matter, [the administrative agency] will decide correctly." *Ross v. Industrial Comm'n*, 82 Ariz. 9, 11–12, 307 P.2d 612, 614 (1957).

¶ 20 Claimant was aware that the ICA would deduct all permanent partial disability benefits payments made to him after his lump-sum commutation request was filed. Notice was given both in italics on the face of

the lump-sum request packet and in the ICA's November 13, 1997 award:

### AWARD

Award is made payable to applicant by the defendant insurance carrier [Special Fund] as follows:

1. Applicant's request for lump sum commutation of Award of April 08, 1996 in the sum of $50,000.00 *less any amounts advanced and/or payments made subsequent to the lump sum request.*

. . . .

**If you do not agree with this award and wish a hearing, then your written request for hearing must be received in either office of the Industrial Commission of Arizona within TEN (10) DAYS from the date of this order, pursuant to A.R.S. § 23–941 and 23–947. IF NO SUCH REQUEST FOR HEARING IS RECEIVED WITHIN THAT TEN (10) DAY PERIOD, THIS AWARD IS FINAL.**

(Italics added.) Yet Claimant never questioned the computation of his lump-sum payment until this appeal. He argues, however, that this case falls within one of several exceptions to the general rule prohibiting consideration of issues for the first time on appeal. We address these arguments in turn.

■■■■ ¶ 21 First, Claimant asserts that we may consider the issue because it is "extant in the record." *Stephens v. Industrial Comm'n*, 114 Ariz. 92, 94–95, 559 P.2d 212, 214–15 (App.1977). Our ability to review matters "extant in the record," however, must be distinguished from our ability to review issues raised for the first time on appeal. *See id.* (contrasting the failure to raise an issue before the ICA and the failure to raise specific alleged error in a request for

**2.** After this case was set for consideration on appeal, the Special Fund moved to withdraw its brief responding to the cross-petition, in which it argued that Claimant failed to preserve the issue for appeal by not raising it before the ICA and that, in any event, the ICA's interpretation of the statutes and rules governing lump-sum commutations is both permissible and correct. This court granted the motion. Although we may, in our discretion, view the withdrawal as a confes-

sion of error, *see Swift Transp. v. Industrial Comm'n*, 189 Ariz. 10, 11, 938 P.2d 59, 60 (App. 1996), we decline to do so here. The Kessens' reply brief states their agreement with the position taken by the Special Fund and further argues that Claimant waived the issue on appeal. We will not give the Special Fund's withdrawal any weight in our analysis when to do so may prejudice another interested party.

review). Matters "extant in the record" are those "where an event occurred at the time the record was made which would thereafter attract attention to that portion of the record," such as an objection to evidence. *Releford v. Industrial Comm'n*, 120 Ariz. 75, 78, 584 P.2d 56, 59 (App.1978). Thus, for an issue to be "extant in the record," it must have been before the ALJ at some point in the proceedings such that the ALJ had some opportunity to consider it, and so that possible error would be "clearly evident" to the ALJ absent a specific request for review. *Id.* (stating that "error in a hearing officer's findings of fact can never be 'extant in the record' "). In this case, nothing occurred, in the form of objection or otherwise, that would have given the ICA reason to question the practice of reducing lump-sum awards by the amount of monthly payments made after the lump-sum request. Because the ICA had no reason to consider the issue, it cannot be "extant in the record."

¶ 22 Second, Claimant argues that he should not be required to raise the issue before a biased tribunal. We rejected this argument in *Phoenix Children's Hospital*, 195 Ariz. at 282 ¶¶ 17–19, 987 P.2d at 768 ¶¶ 17–19 (requiring appellant to exhaust administrative remedies and build factual record before administrative tribunal; rejecting argument that to proceed before agency would be futile because of agency's alleged partiality). We similarly reject it now.

¶ 23 Third, Claimant argues that the issue is one of a "general public nature, affecting the interests of the state at large." *Ruth v. Industrial Comm'n*, 107 Ariz. 572, 574, 490 P.2d 828, 830 (1971) (quoting *South Tucson v. Board of Supervisors*, 52 Ariz. 575, 583, 84 P.2d 581, 584 (1938)). We disagree that the issue is of such significant public—as opposed to personal—interest as to defeat the requirement that Claimant first raise it before the ICA. To the extent that the issue should be examined, our review would benefit from further development below.

¶ 24 Finally, citing *Gerhardt v. Industrial Commission*, 181 Ariz. 215, 889 P.2d 8 (App.1994), Claimant asserts that his failure to raise the issue before the ICA should

be excused because, at the time of the February 12, 1998 award, he had no financial incentive to dispute the practice of reducing the lump-sum payment by the amount of the payments made after the initial request. He argues that the amount in question at the time of the award, approximately $400.00, was not sufficient incentive to challenge the practice. In *Gerhardt*, the claimant allowed a denial of benefits to become final without requesting a hearing. *See id.* at 216, 889 P.2d at 9. He petitioned to reopen his claim one year later when his injury was aggravated. *See id.* This Court reversed the ALJ's dismissal of the petition, holding that claim preclusion did not bar the claimant from reopening his claim because at the time of the denial the claimant had missed no work and accrued no medical bills; therefore, he had "absolutely no incentive or reason to request a hearing . . . ." *Id.* at 218, 889 P.2d at 11 (relying on *Circle K Corp. v. Industrial Comm'n*, 179 Ariz. 422, 880 P.2d 642 (App. 1993)). Although the Court allowed the claimant to reopen his claim, it specifically stated that he would be precluded from raising issues that were "existing and known at the time of his notice [of claim denial.]" *Id.*

¶ 25 In this case, however, Claimant was aware of the ICA's practice and knew that it would apply to him. He was also aware that the award was subject to challenge by a petition for special action in this court, which would further delay his lump-sum payment and result in a greater reduction in the lump sum. Claimant does not dispute that he was affected by the reduction; he alleges only that it was not worth the fight at that time. We need not engage in the difficult task of distinguishing among degrees of incentive. If Claimant felt that he was wronged by the award, then he should have raised the issue before the ICA.

¶ 26 Throughout his argument, Claimant alleges that the ICA has substantively and impermissibly changed its practice of computing lump-sum payments. To demonstrate this point, Claimant has appended to his reply brief documents from an unrelated case, documents which are, of course, not part of the record in this case and of which we may not take judicial cognizance. That

Claimant supports his claim with outside-the-record factual allegations highlights the impropriety of our review now. This court is not the appropriate forum for resolving factual disputes. *See Phoenix Children's Hosp.*, 195 Ariz. at 282 ¶ 18, 987 P.2d at 768 ¶ 18 (agency is proper place to build factual record); *Medina v. Arizona Dep't of Transp.*, 185 Ariz. 414, 417, 916 P.2d 1130, 1133 (App.1995) (making a factual record is one of primary purposes for exhaustion requirement); *see also Countryman v. Industrial Comm'n*, 10 Ariz.App. 201, 203, 457 P.2d 741, 743 (1969) (refusing to consider evidence outside of the record). Accordingly, we conclude that Claimant may not raise the issue for the first time in this special action.

¶ 27 We affirm the ICA's February 12, 1998 award.

CONCURRING: E.G. NOYES, JR., Judge, JON W. THOMPSON, Judge.