193 P.3d 310

Moises AVILA, Petitioner,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Asset Landscaping, Respondent
Employer,

Special Fund Division/No Insurance
Section, Respondent Party in
Interest.

No. 1 CA–IC 07–0016.

Court of Appeals of Arizona,
Division 1, Department D.

May 13, 2008.

Robert J. Hommel, P.C. By George V. Sarkisov, Scottsdale, Attorneys for Petitioner Employee.

Laura L. McGrory, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Jones, Skelton & Hochuli, P.L.C. By Terrence Kurth, Phoenix, Attorneys for Respondent Employer.

Industrial Commission of Arizona, Phoenix Special Fund Division/No Insurance Section By Suzanne Scheiner Marwil, Phoenix, Attorney for Respondent Party in Interest.

## OPINION

THOMPSON, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for unscheduled permanent partial disability benefits. Two issues are presented on appeal:

(1) whether the administrative law judge (ALJ) erred by allowing the uninsured respondent employer, Asset Landscaping (Asset), to appear in the proceedings; and

(2) whether the ALJ erred by including the dishwasher position in her loss of earning capacity (LEC) calculation.

Because we find that the ALJ did not err by allowing the respondents to have separate representation and that the dishwasher position was within the petitioner employee's (claimant's) accepted physical limitations, we affirm the award.

## JURISDICTION AND STANDARD OF REVIEW

¶ 2 This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12–120.21(A)(2) (2003), 23–951(A) (1995), and Arizona Rule of Procedure for Special Actions 10. In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law de novo. *Young v. Indus. Comm'n,* 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App.2003). We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n,* 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App.2002).

## PROCEDURAL AND FACTUAL HISTORY

¶ 3 At the time of his injury, the claimant worked as a laborer for Asset. While applying fertilizer, he slipped and fell on wet concrete and struck his right shoulder. Greg Keller, M.D., operated on the claimant's shoulder to repair a rotator cuff tear and an impingement.

¶ 4 The claim was closed with an unscheduled permanent partial impairment. The ICA entered an award for an unscheduled permanent partial disability. It found that the claimant had sustained a 24.40% reduction in his monthly earning capacity, which entitled him to receive $156.89 per month. The claimant timely requested a hearing, and an ICA hearing was held for testimony from the claimant, Dr. Keller, an independent medical examiner, Irwin Shapiro, M.D., and three labor market experts. The ALJ entered an award adopting Dr. Shapiro's physical limitations for the claimant and finding three different jobs as suitable and reasonably available employment.

¶ 5 The relevant finding provides in pertinent part:

The undersigned adopts the opinion of Larry Mayer that applicant's limitations would not preclude him from working as an office cleaner or a dishwasher based upon Dr. Shapiro's limitations. Working as an office cleaner, applicant could earn $820.24 per month based upon a 30 hour work week, earning $6.31 per hour on a rollback basis. Working as a dishwasher, applicant's earning capacity could be as much as $1,032.99 per month based upon a forty hour work week, earning $5.96 per

hour on rollback basis. The undersigned adopts David Janus's opinion that applicant can work as [a] door hanger.[1] Working as a door hanger, applicant can earn as much as $736.04 per month based upon a 30 hour work week, earning $5.67 per hour on a rollback basis.

The undersigned calculated applicant's monthly entitlement by averaging the monthly earning capacities as follows: $820.24 + $1,032.99 + $236.68 = $2,090.91 divided by 3 = $696.97 average monthly earning capacity. $1,169.19 average monthly wage − $696.97 monthly earnings − 472.22 × 55% = $259.72 per month permanent award.

¶ 6 The award subsequently was corrected by an order nunc pro tunc:

The Decision is corrected to read: The monthly earning capacity for a door hanger is $736.04. Applicant's entitlement is calculated by adding the monthly earning capacities of office cleaner ($820.24) dish washer ($1,032.99) and door hanger ($736.04). The total is $2,589.27. Then [sic] amount divided by three equals $863.09. $1,169.19 average monthly wage − $863.09 = $306.10 × 55% = $168.36 per month permanent award.

The award was supplemented and affirmed on administrative review, and the claimant brought this special action.

## DISCUSSION

■ ¶ 7 The claimant first argues that the ALJ erred by allowing the claimant's uninsured employer, Asset, to appear in the proceedings with separate counsel in light of the Special Fund Division's (Special Fund) participation. He asserts that it was unduly burdensome for him to have to litigate a single claim against two separate attorneys. Both Asset and the Special Fund respond that their interests are not the same and each has the right to independent representation. The Special Fund adds that it does

not represent Asset's interests, and because Asset is the party ultimately responsible for any benefits expended on the claimant's behalf, it would violate due process [2] to refuse it separate representation. See A.R.S. § 23–907(E) (Supp.2006) (employer to be notified of its liability to the Special Fund periodically and notice shall include ten percent penalty of amounts expended).

¶ 8 Parties to a review of a workers' compensation award usually include the injured worker, the ICA, the employer, and, if the employer is insured, the employer's insurance carrier. See generally A.R.S. § 23–901(10) (Supp.2006) (defining an "interested party"). Although the ICA is a nominal party to every ICA special action, it only appears as an advocate when it must to defend the Special Fund or its general interests. See Evertsen v. Indus. Comm'n, 117 Ariz. 378, 382, 573 P.2d 69, 73 (App.1977) approved and adopted, 117 Ariz. 342, 572 P.2d 804 (1977); 1 Ariz.App. Handbook § 5.8.2, at 5–14 (Supp.2006). One instance in which this occurs is when the employer is uninsured. See, e.g., Konichek v. Indus. Comm'n, 167 Ariz. 296, 297, 806 P.2d 885, 886 (App.1990). When the ICA legal division participates, its counsel represents the interests of the ICA. See Ariz. Admin. Code (A.A.C.) R20–5–162.

¶ 9 One of the express purposes for the adoption of the Arizona Workers' Compensation Act was to curtail litigation between the employer and the employee and place the burden upon industry for compensating work-related injuries. Pressley v. Indus. Comm'n, 73 Ariz. 22, 28, 236 P.2d 1011, 1015 (1951).[3] Thus, an employer that complies with the statutory mandate to secure workers' compensation insurance receives immunity from being sued by its employees "at common law or by statute." See A.R.S. § 23–906(A) (Supp.2006). But an employer that fails to secure this coverage "shall not be entitled to the benefits of this chapter during the period of noncompliance, but shall

1. A "door hanger" distributes advertising flyers door to door.

2. See, e.g., Kessen v. Stewart, 195 Ariz. 488, 492, 990 P.2d 689, 693 (App.1999) (procedural due process requires an adequate opportunity to fully present factual and legal claims).

3. We also note that Article 18, Section 8, of the Arizona Constitution places the responsibility of compensating injured workers on the employer and not on the insurance carrier. See Culver v. Indus. Comm'n, 23 Ariz.App. 540, 543, 534 P.2d 754, 757 (1975).

be liable in an action under any other applicable law of the state." *See* A.R.S. § 23–907(A).

¶ 10 The claimant argues that Asset's failure to carry workers' compensation coverage statutorily precludes it from the "benefits" of the Workers' Compensation Act. Specifically, he contends that an uninsured employer is precluded, by A.R.S. § 23–907(A), from enjoying the benefit of the right to appear with counsel at a proceeding. We conclude that the "benefits" precluded by reason of Asset's uninsured status do not include representation.[4] We can discern nothing in the statutory scheme or the cases interpreting it, that would bar an uninsured employer from appearing with separate legal representation at the proceedings. Although it is true that the Special Fund is in the first instance liable for the payment of benefits to an employee of an uninsured employer, the statute provides that the amount paid by the Special Fund shall act as a judgment against the employer. A.R.S. § 23–907(C).

¶ 11 The claimant has not provided us with any specific authority supporting his position. He directs our attention to *Kessen v. Stewart*, 195 Ariz. 488, 990 P.2d 689 (App.1999). In *Kessen*, the uninsured employer protested the ICA's approval of a lump-sum commutation awarded to the claimant. This court held that the statute requiring consent of the "carrier liable to pay [the] claim" referred to the Special Fund, which was primarily liable for the claim, and not to the uninsured employer who was secondarily liable to the Special Fund. *Id.* at 491, ¶¶ 9–10, 990 P.2d at 692. We noted that this provision was consonant with the uninsured employer's due process rights since the employer was afforded notice and a hearing in which its objection was considered and which protest was presented by the employer's attorney. *Id.* at 492–93, ¶¶ 16–17, 990 P.2d at 693–94.

¶ 12 We note, as a practical matter, that although Asset and the Special Fund both sent the claimant interrogatories, the claimant underwent only one deposition and one independent medical examination. With regard to interrogatories in a workers' compensation proceeding, the rules provide:

A. After a party files a request for hearing with the Commission, any party may serve written interrogatories upon another party. A party shall serve written interrogatories at least 40 days before the scheduled hearing.

B. A party shall not serve more than 25 interrogatories, including subsections.

A.A.C. R20–5–144. Since both Asset and the Special Fund were parties to this ICA proceeding, this rule allows each to send separate interrogatories.

¶ 13 We next address the claimant's argument that the ALJ erred by relying on the dishwasher job in calculating his LEC. In establishing the LEC, the object is to determine as nearly as possible whether the claimant can sell his services in the open, competitive labor market, and for how much. *Davis v. Indus. Comm'n*, 82 Ariz. 173, 175, 309 P.2d 793, 795 (1957). The burden of proving LEC is on the claimant. *See, e.g., Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580, 672 P.2d 922, 924 (1983).

¶ 14 The claimant can meet this burden by presenting evidence of his inability to return to his date-of-injury employment and by making a good faith effort to obtain other suitable employment or by presenting testimony from a labor market expert to establish his residual earning capacity. *See D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 266, 717 P.2d 943, 945 (App.1986). In determining a claimant's residual earning capacity, the ALJ must consider "any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury, and the age of the employee at the time of injury." A.R.S. § 23–1044(D) (Supp.2006).

---

4. There is evidence in the record that supports Asset's assertion that it attempted to procure workers' compensation coverage and there is a third-party action resulting from the failure to procure that coverage. Asset's belief it was insured is relevant to whether it ultimately is assessed a penalty by the Special Fund for being uninsured. *See* A.R.S. § 23–907(K).

¶ 15 The labor market expert's role is to receive medical input from the treating physician regarding the claimant's physical capabilities and to match them to the requirements of specific jobs in the open labor market. *See Tucson Steel Div. v. Indus. Comm'n,* 154 Ariz. 550, 556, 744 P.2d 462, 468 (App.1987). In order to establish residual earning capacity, there must be evidence of job opportunities that are (1) suitable, i.e., that the claimant would reasonably be expected to perform considering his physical capabilities, education, and training; and (2) reasonably available. *Germany v. Indus. Comm'n,* 20 Ariz.App. 576, 580, 514 P.2d 747, 751 (1973).

¶ 16 The claimant argues that the dishwasher position is not suitable employment for him based on his residual physical limitations. Specifically, he argues that the position is inconsistent with a limitation contained in Dr. Keller's February 9, 2005 medical report that he not work with his right arm extended. In this case, the ALJ relied on Dr. Shapiro's evaluation of claimant's physical limitations when selecting suitable employment on which to base her LEC calculation. *See Le Duc v. Indus. Comm'n,* 116 Ariz. 95, 98, 567 P.2d 1224, 1227 (App.1977) (ALJ determines weight to be accorded a labor market expert's opinion). While we recognize that Dr. Shapiro stated that the claimant's physical limitations were essentially the same as those found by Dr. Keller, Dr. Shapiro did not provide any limitation on the claimant working with his right arm extended. For these reasons, the ALJ did not err by utilizing the dishwasher position in her LEC calculation.

## CONCLUSION

¶ 17 For the foregoing reasons, the award is affirmed.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and SUSAN A. EHRLICH, Judge.

