NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAY SHERMAN, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

CONN'S, INC., *Respondent Employer,*

TRAVELERS INDEMNITY CO. OF CONNECTICUT, *Respondent Carrier.*

No. 1 CA-IC 24-0017
FILED 12-24-2024

Special Action - Industrial Commission
ICA Claim No. 20221610115
Carrier Claim: No. 042-CB-FWQ0839-H
The Honorable Robert E. Trop, Administrative Law Judge
The Honorable Janet S. Weinstein, Administrative Law Judge

**AWARD AFFIRMED**

APPEARANCES

Jay Sherman, Litchfield Park
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent ICA*

Lundmark, Barberish, LaMont & Puig, PC, Phoenix
By Javier A. Puig, David T. Lundmark
*Counsel for Respondent Employer & Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge D. Steven Williams and Judge Daniel J. Kiley joined.

---

**B R O W N**, Judge:

¶1        Jay Sherman challenges an Industrial Commission of Arizona ("ICA") award finding he did not suffer a compensable injury.  For the following reasons, we affirm.

## BACKGROUND

¶2        Sherman worked for Conn's, Inc., selling furniture.  On June 5, 2022, Sherman was injured while trying to wrap an extra-long twin mattress for delivery to a customer.  The incident was recorded on a surveillance camera.  Sherman reported the injury to the ICA, and after the claim was denied, he timely requested a hearing.

¶3        An Administrative Law Judge ("ALJ") considered the records in the claim file and heard testimony from Sherman and two doctors.  According to Sherman, he was told by his manager to wrap the mattress in cellophane for delivery.  In doing so, he placed the mattress on its long side at the foot of the bedframe and went to reposition himself when part of the mattress caught the frame.  Sherman lost his balance and fell on the mattress, and "the only thing" he remembered after falling is that "for some reason I was on my back."[1]  Sherman explained that he may have blacked out, but was not certain.  While lying on the floor, he texted his manager, who helped Sherman stand up.

¶4        Sherman also discussed the numerous health issues he allegedly developed because of his fall, including hip, leg, and elbow pain;

---

[1]        Sherman reported to medical personnel that he was using a bar to help lift the mattress, but after losing his footing he "hit his right clavicle and throat" on the bar and then fell backwards, landing on his back and right side, directly onto the concrete floor.

extreme pain while walking, occipital neuralgia, major anxiety, chest pain, a dislocated clavicle, shoulder and neck pain, facial twitches, electric shocks in his back, extreme nausea, vomiting, dizziness, herniated disc, spinal tear, nerve damage, and a concussion. Sherman further explained that he had preexisting health problems such as chronic fatigue syndrome and that he was being tested for several autoimmune conditions.

¶5        Dr. Singh, a neurologist, testified that Sherman visited him on November 21, 2022. Singh explained that Sherman was "not remembering things well" and complained of pain in the lower back, groin, and back of the head—which Singh classified as occipital neuralgia. To treat the occipital neuralgia, Singh prescribed medication and referred Sherman to physical therapy. When asked whether the medication and physical therapy were prescribed because of the mattress incident, Singh replied, "[t]here is no way for us to 100 percent be sure that that's what caused the problem."

¶6        Because Sherman claimed memory issues, Singh ordered a brain MRI, which showed that Sherman had a scar on the right frontal lobe of his brain, which Singh understood to be from an "old injury." Singh requested that Sherman undergo a neuropsychological evaluation and confronted him when he thought Sherman was not making a "real good effort" to answer the questions. Singh believed there was no major issue and could diagnose Sherman with, at most, a mild cognitive impairment, with the qualification that there was "no way" to determine whether Sherman's fall caused it. On cross-examination, Singh distinguished a concussion from a mild concussion and then confirmed that based on Sherman's subjective complaints, the diagnosis was a mild concussion.

¶7        Dr. Gendy, an orthopedic surgeon, testified that he performed an independent medical examination ("IME") and issued a report. According to Gendy, there was a "big mismatch" between the injury that Sherman described during the medical examination and what Gendy saw on the video from the store. In contrast to the video, Sherman stated he (1) utilized a bar to help lift the mattress to wrap it in cellophane, and (2) hit his right clavicle and throat on a bar as he fell and landed on his back on the concrete. Gendy described the video as showing that Sherman (1) "sort of slumps forward and lays on the mattress" as it slid down, (2) did not hit his clavicle or throat on a bar, and (3) did not land on his back. Gendy found Sherman's fall benign.

¶8        Gendy also testified that Sherman was "extremely guarded throughout the entire evaluation and exam." For example, when asked to

perform basic range of motion and strength tests, Sherman refused, stating, "Oh, it would hurt too much to do it," even though he had arrived for the examination without the use of any durable medical equipment such as a cane or walker. Gendy determined he could not objectively verify Sherman's complaints because Sherman put "minimal effort" into the examination. Gendy testified he saw nothing indicating Sherman suffered a concussion, nor did he sustain any orthopedic or neurological injury by landing on a mattress. Gendy also opined that the symptoms he heard from Sherman did not equate to the symptoms of a concussion. Gendy concluded that although prior medical reports reiterated Sherman's subjective complaints, "[w]hen you look at the objectivity, there's nothing there."

¶9 The ALJ issued an award denying Sherman's claim. After a review of testimony, medical records, and the video footage, the ALJ found that on June 5, 2022, Sherman fell while working "but did not sustain any injury or exacerbation of any pre-existing condition caused or contributed to by the fall," and so he failed to carry his burden that he sustained a compensable injury. The ALJ found Sherman's description of his fall to be exaggerated and inconsistent with what the video footage showed because Sherman neither bounced off the mattress nor hit his head on the floor. Instead, he fell forward onto the mattress, laid there for several seconds, and rolled over onto his back. The ALJ concluded that Sherman was not an "accurate historian," some of the non-medical facts Singh based his opinion on were unreliable, and Gendy's opinions were well-founded.

¶10 Sherman timely requested review. Because the initial ALJ had retired from the ICA, a different ALJ was assigned to the case. *See* A.R.S. § 23-942(B). The newly assigned ALJ then issued a decision upon review affirming the award, explaining after reviewing the "case file, record, and all related matters," there was no indication of any legal error and the award was "fully supported by the evidence." Sherman then filed this statutory special action appeal. We have jurisdiction under A.R.S. §§ 12-120.21(A)(2) and 23-951(A).

## DISCUSSION

¶11 In reviewing the ICA's awards and findings, we defer to the ALJ's factual findings but review legal questions de novo. *Avila v. Indus. Comm'n*, 219 Ariz. 56, 57, ¶ 2 (App. 2008). To establish a compensable claim, an injured worker must prove the injury suffered was causally related to the industrial accident. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). The worker must establish the causal relationship between the

industrial accident and the injury—through expert medical testimony— when the cause of injury is not readily apparent. *T.W.M. Custom Framing v. Indus. Comm'n*, 198 Ariz. 41, 45, ¶ 12 (App. 2000). The ALJ must resolve conflicting evidence by determining "which of the conflicting testimony is more probably correct." *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975). We defer to the ALJ's resolution of conflicting evidence and affirm the findings if any reasonable theory of the evidence supports them. *Id.* at 398–99.

**¶12** Sherman argues the ALJ improperly gave Gendy's testimony and the IME report preferential weight, asserting that Gendy omitted critical medial evidence and contradicted himself many times in his testimony. But Sherman fails to recognize that he did not meet his burden of establishing a compensable claim. *See DeSchaaf v. Indus. Comm'n*, 141 Ariz. 318, 320 (App. 1984) ("[M]edical causation ordinarily requires expert medical testimony to establish that the industrial accident caused the injury."). As Gendy explained, a subjective retelling of pains and discomfort felt throughout Sherman's body does not mean that Sherman suffered a concussion. The video evidence confirms Gendy's skepticism that Sherman suffered any injury, much less a concussion, when falling onto the mattress. And though Singh seemed to have diagnosed Sherman with a mild concussion, the ALJ determined that Gendy's medical opinion was more reasonably well-founded. It was the ALJ's duty to resolve the conflicting evidence, and the ALJ did so, in favor of Gendy.

**¶13** Moreover, both doctors testified they did not believe that Sherman put in an effort during the medical examinations. The ALJ also found that Sherman's testimony was unreliable because his recount of the accident was inaccurate. *See Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984) (noting that an ALJ is the "sole judge of witness credibility" and affirming the ALJ's finding that a claimant's testimony lacked credibility given that it was self-contradictory and inconsistent with other evidence). Gendy reiterated in his testimony and IME report that Sherman's factual recounting of his fall did not match what is depicted in the video recording. Thus, the ALJ's findings and award are supported by reasonable evidence.

**¶14** Sherman asserts that an employer takes employees "as they are," including prior injuries and disabilities, and that his pre-existing conditions were aggravated by his fall, therefore entitling him to compensation. We recognize that an injury is compensable when it aggravates a pre-existing condition to produce a further injury. *Martinez v. Indus. Comm'n*, 192 Ariz. 176, 180, ¶ 17 (1998). Although Sherman testified

about many symptoms he experienced because of his fall as well as prior medical diagnoses, he failed to provide medical evidence showing that his fall aggravated any of his pre-existing medical conditions.

**¶15** Sherman argues that Gendy had a "conflict of interest" because he previously worked for the CORE Institute, where Sherman received treatment for his injuries from falling on the mattress. Sherman also points to Gendy being Facebook friends with one of Sherman's treating physicians. As noted by the respondent carrier, Sherman does not show how Gendy's work history or relationships with other doctors created an impermissible "conflict of interest" or how those interactions were prejudicial to Sherman. Thus, he has failed to establish any legal basis for setting aside the award for these alleged conflicts.

**¶16** Finally, Sherman asserts that (1) counsel for the respondent carrier failed to disclose various undescribed videos, photos, and phone calls, and (2) the ALJ failed to consider the "material properties of the mattress . . . which may have contributed to the severity of the injury." Because he failed to provide any supporting legal authority or develop any meaningful analysis supporting those assertions, they are waived. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6 n.2 (App. 2007) (explaining that appellant's failure to support argument waives the issue on appeal).

## CONCLUSION

**¶17** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:
JR