NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CATHERINE ZAWADA, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AMERICAN PARKING INC, *Respondent Employer*,

ZENITH INSURANCE, *Respondent Carrier*.

No. 1 CA-IC 25-0010
FILED 12-02-2025

Special Action - Industrial Commission
ICA Claim No.  20230600032
Carrier Claim No. 973193
The Honorable Jeanne M. Steiner, Administrative Law Judge

**AFFIRMED**

COUNSEL

Catherine Zawada, Sun City
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

¶1     Catherine Zawada challenges the closing of her workers' compensation claim by her employer American Parking, Inc. ("AP"), and its carrier, Zenith Insurance ("Zenith") (collectively, "Respondents"), contending she continues to need care. The Industrial Commission of Arizona (the "ICA") concluded she is medically stationary, needs no further active treatment or supportive care, and has no permanent impairment from her work-related injury. Because the evidence supports the ICA's determination, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2     Zawada was employed by AP and worked at a hospital. One day in February 2023, Zawada was injured when an unruly patient blindsided her with a closed-fist punch to her jaw. As she fell to the floor, her head hit the wall with such force that it left a dent in the drywall. She lost consciousness briefly and, upon regaining consciousness, was taken to the emergency room for evaluation. While there, she underwent a CT scan of her head and, because she complained of wrist pain, a radiograph of her wrist. The imaging studies were both negative for traumatic injury. Zawada was released after about an hour, and drove herself home.

¶3     In March 2023, Zawada sought treatment for intermittent headaches. The nurse practitioner conducted a neurological examination, with Zawada testing normal in all areas. The nurse practitioner also ordered an MRI, which was conducted on May 9, 2023. The MRI did not reveal any traumatic injury to her brain, only "mild small vessel ischemic changes, small right maxillary sinus mucous retention cyst or polyp, and small left and trace right mastoid effusions." The doctor also ordered an electroencephalogram for more imaging of the brain, which was conducted in April 2023 and was normal.

¶4     Respondents accepted Zawada's workers' compensation claim as a medical-only loss claim. *See* A.R.S. § 23-963.01(E) (providing that

"'medical-only loss' means loss that has no indemnity value reflecting lost wages").[1] She was treated over the next months for migraines and received "balance therapy" for her vestibular problems. Additionally, she has been receiving psychotherapy for posttraumatic stress disorder ("PTSD") and anxiety. She has not yet returned to work.

¶5            In November 2023, Respondents issued a notice closing the claim with no supportive care and no permanent impairment.[2] Zawada protested the closure and requested a hearing. An ICA administrative law judge (the "ALJ") conducted a hearing in multiple sessions held over several months at which Zawada and four expert witnesses testified about her alleged head injury.[3]

¶6            Zawada testified that she has no recollection of being punched. One moment, she said, she was standing in the doorway to prevent a patient from entering a room that was not his. The next thing she remembers is "sitting on the floor" while "the room was swirling." She has experienced dizziness "every day" since the incident, she testified, and began experiencing "headaches . . . about two days later." She also testified that she underwent treatment for an "acute stress disorder," explaining that she felt "afraid that the guy" who punched her "would find [her] and finish [her] off." After several visits with one psychologist, she stated, she has begun receiving psychological treatment from Ashley Hart, Ph.D. She also testified that she continues to receive balance therapy from Maninder Kahlon, M.D. When asked if she feels able to return to her former employment, Zawada answered, "No," explaining that she would be "scared of getting harmed." She also testified that she does not feel "stable enough physically" to return to work, adding that she has had "several falls." She admitted, however, that she does not use a walker or other assistive device outside her home, that she continues to drive herself, and that she does her own grocery shopping.

¶7            The four experts all agreed that Zawada was medically stable and not permanently impaired. They disagreed, however, about the necessity of supportive care. Dr. Kahlon and Dr. Hart opined that Zawada

---

[1] Zenith later paid Zawada temporary disability benefits.
[2] The Notice of Claim Status closing the claim is not part of the file sent to this court. The parties, however, do not dispute that the claim was closed by notice in November 2023.
[3] Zawada's wrist injury was not addressed at the hearing.

requires supportive care; Barry Hendin, M.D., and James Youngjohn, Ph.D., testified that she does not.

¶8        Dr. Kahlon testified that he has been a practicing neurologist for almost 30 years and that he treated Zawada for dizziness, memory loss, and neck pain following her injury. He stated that Zawada suffered a "traumatic injury to the head" and that, as a result of the injury, she is "going to need" both "treatment for [PTSD]" and "vestibular therapy" to address her "bouts of dizziness" and "imbalance." When asked how often she would need vestibular therapy, Dr. Kahlon replied, "Probably every two months or so." He also opined, however, that Zawada was medically stationary as of October 2024.

¶9        Dr. Hart, a licensed psychologist, testified he began treating Zawada in May 2024 with a course of cognitive behavioral therapy for PTSD, traumatic brain injury, and major depressive disorder stemming from the workplace assault. He was still treating her for PTSD when he testified in October 2024. He testified her condition was stable and recommended supportive care consisting of monthly psychotherapy visits and then a reassessment of her needs after a year.

¶10       Dr. Hendin, a board-certified neurologist, testified about his training and experience, including his clinical experience in Phoenix since 1974 and his service as a clinical professor at the University of Arizona. He testified that he performed an independent medical examination ("IME") of Zawada in June 2024. He described the "tests of balance and vestibular function" that he conducted, explaining that Zawada "performed quite nicely." He also described the "mini mental status examination" he conducted, explaining that it consisted of "a series of 30 questions" regarding "orientation" to "time" and "place," short- and long-term memory, the "ability to write a sentence coherently," and the "ability to follow instructions." On this test, too, Zawada "did . . . quite well." Finally, Dr. Hendin testified, he conducted a neurologic examination that "involve[d] walking and standing and intellectual functioning," and found no "deficit[s]." He opined that Zawada had experienced a concussion that was fully resolved. He considered her condition stationary with no permanent impairment and no need for further care. He testified that while he "respects [Dr. Kahlon] highly," he "respectfully disagree[d]" with Dr. Kahlon's opinion that Zawada requires ongoing supportive care. "I found no evidence of imbalance or vestibular dysfunction objectively," he stated, and so did not believe "that ongoing vestibular therapy would be helpful or necessary."

¶11        Dr. Youngjohn testified that he is a board-certified clinical neuropsychologist and has been in private practice for 35 years. He also testified that he conducted an IME on Zawada in October 2023. She exhibited "normal performances" based on the neuropsychological testing he performed, he testified, and showed "no decline in her level of cognitive function." He further testified that "[an] MRI scan of her brain showed no structural damage."

¶12        Noting that records from Zawada's psychologist indicated that Zawada exhibited "resistance towards moving forward," Dr. Youngjohn opined that someone who "is actively resisting recovery" is "not going to get better." According to Dr. Youngjohn, Zawada suffered a concussion and developed mild post-concussion symptoms following her injury but was "neuropsychologically and psychologically" stationary by the time of his examination. He also opined she did not have permanent impairment and did not need supportive care.

¶13        Finding the opinions of Dr. Youngjohn and Dr. Hendin "more probably correct and well founded[,]" the ALJ affirmed the closure of Zawada's claim. Zawada requested administrative review. Along with her request, Zawada submitted new evidence including photographs and a letter from Dr. Kahlon dated March 7, 2025. The ALJ declined to consider the newly-submitted evidence, holding that the decision must be based on the record at the conclusion of the hearing. *See* A.R.S. § 23-943(E) (providing that review of ALJ award "shall be based on the record"); Ariz. Admin. Code R20-5-159 (providing, *inter alia*, that decision must be based on evidence in "[t]he record as it exists at the conclusion of the hearings"). The ALJ reconsidered the evidence previously presented and made supplemental factual findings affirming that Zawada's work-related condition was stationary with no permanent impairment or need for further active care or supportive care.

¶14        Zawada timely sought review by this court. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(B) and 23-951(A).

**DISCUSSION**

¶15        In her opening brief, Zawada challenges the closure of her claim, faulting the ALJ for "sid[ing] with the hired IME providers rather than the attending neurologist[,] Dr. Kahlon."

¶16        An injured worker claiming the right to continue to receive benefits must show that her condition has not become stationary, *Stephens*

*v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977), or that she is entitled to supportive medical care benefits "to prevent or reduce the continuing symptoms of an industrial injury after the injury has become stabilized." *Capuano v. Indus. Comm'n*, 150 Ariz. 224, 226 (App. 1986).

¶17        We view the evidence in a light most favorable to upholding the award. *Avila v. Indus. Comm'n*, 219 Ariz. 56, 57, ¶ 2 (App. 2008). The ALJ is empowered to resolve conflicts in the evidence and determine witness credibility. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968). We do not re-weigh the evidence, *Wal-Mart v. Indus. Comm'n*, 183 Ariz. 145, 146–47 (App. 1995), and will defer to the ALJ's resolution of conflicts in the evidence if supported by any reasonable theory of the evidence, *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975). We will affirm an ALJ's resolution of conflicting medical opinions absent an abuse of discretion. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 605, ¶ 10 (App. 2000).

¶18        Both Dr. Youngjohn and Dr. Hendin provided conclusions that are consistent with the medical records and physical examination results. Both are licensed, experienced medical specialists in the relevant fields of neuropsychology and neurology. Although Zawada disagrees with their conclusions and questions their objectivity, she has failed to show that the ALJ's decision to accept their testimony is not "reasonably supported on any reasonable theory of the evidence." *Perry*, 112 Ariz. at 399. The ALJ, thus, did not abuse her discretion in accepting their testimony.

¶19        Zawada also questions whether the ALJ reviewed all the evidence, suggesting that the ALJ was "oblivious" to the "actual reports." But a reviewing court presumes that an ALJ considered all relevant evidence, *Carranza v. Indus. Comm'n*, 22 Ariz. App. 547, 550 (1974), and in her decision, the ALJ explicitly stated she considered all of the medical records and other documents in the file. Furthermore, the ALJ reconsidered the evidence at Zawada's request and came to the same conclusion. We find no grounds for Zawada's accusation that the ALJ did not consider all the admitted evidence.

¶20        To the extent Zawada argues the ALJ erred by not considering the new evidence that she submitted after the ALJ issued her decision, we find no error. By ICA statute and rule, the administrative review must be based on the evidentiary record created before closing the record at the end of the hearing sessions. A.R.S. § 23-943(E); Ariz. Admin. Code R20-5-159; *see also Magma Copper Co. v. Indus. Comm'n of Ariz.*, 139 Ariz. 38, 47-48 (1983)

("[T]he time for presentation of evidence is at the hearing before the Commission."). At the end of the last hearing session, the ALJ told the parties to "make sure everything you want is in" evidence before January 10, 2025. The ALJ did not abuse her discretion in refusing to consider additional evidence offered after that deadline.

## CONCLUSION

¶21          We affirm.

