NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AMMAR HALLOUM, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

BLACK DIAMOND NETWORKS LLC, *Respondent Employer,*

FEDERAL INSURANCE CO, *Respondent Carrier.*

No. 1 CA-IC 25-0006
FILED 01-26-2026

Special Action - Industrial Commission
ICA Claim No. 20233470497
Carrier Claim No. 40523050481
The Honorable Trudy Rushforth, Administrative Law Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office P.C., Phoenix
By David L. Abney
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Ritsema Law, Phoenix
By Meghann Fawcett
*Counsel for Respondents Employer and Carrier*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

**F U R U Y A**, Judge:

¶1 Ammar Halloum seeks reversal of an Industrial Commission of Arizona ("ICA") award denying compensability of his workers' compensation claim. An Administrative Law Judge ("ALJ") found he intentionally fell while at work and therefore was not injured by accident. For the reasons below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 We view the evidence in the light most favorable to upholding the award. *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544–45 (1981).

¶3 In November 2023, Halloum was injured when he fell down at the bottom of a metal stairway at work. On the bottom step, he fell forward, headfirst into a landing area with a closed but unlatched metal gate that swung outward when he hit it. The fall was captured by a security camera but otherwise not witnessed. While he lay at the bottom of the stairway, he yelled out for help and others came, including emergency medical services who had been called to the scene. EMTs found Halloum conscious but "unresponsive." He was taken to the hospital. There were no visible injuries on his face or body. CT scans of the brain, head, neck, and spine were negative. Other than elevated blood sugar levels, laboratory tests returned normal results. Nevertheless, Halloum was hospitalized with a diagnosis of "non-ST elevated myocardial infarction." He remained in the hospital for several days and later was transferred to a rehab center where he received speech therapy, physical therapy, and occupational therapy. A psychiatric consult while Halloum was in the hospital described potential psychological conditions based on his unresponsiveness after the incident as "a question of catatonia versus conversion reaction."

¶4 Halloum filed a report of injury and sought workers' compensation benefits. Respondents Black Diamond Networks, LLC and Federal Insurance Co. denied Halloum's claim. He requested a hearing and

an ICA ALJ heard from several witnesses, including Halloum, Dr. Luay Shayya who treated Halloum, and an independent medical examiner.

¶5 Halloum testified he did not remember what he was doing before he fell. He also described his memory of events before the day he fell as "hit and miss." He said he only recalled events from what he read in "the reports" or from what people have told him. He admitted that before he fell, he believed he was being discriminated against by his employer and had filed a complaint. In addition, he did not recall he had a felony conviction for theft in 2004.

¶6 Dr. Shayya is board-certified in "adult neurology, neuromuscular medicine, and brain injury medicine" and treated Halloum after he was discharged from the rehab center. Dr. Shayya testified the emergency services records of the incident showed Halloum was not responsive and did not verbalize or move and interact with the responders. He described the emergency treatment Halloum received as "trauma activation following a fall" in which Halloum had "high blood pressure" and "a very high blood sugar." He related that the neurologist who saw Halloum in the hospital had diagnosed "acute transient encephalopathy." Dr. Shayya diagnosed Halloum with a concussion, migraine, and neck pain, believing Halloum had "passed out" when he fell. Neither a physical exam nor any of the testing he performed resulted in any significant findings. He treated Halloum for headaches and concluded six months later "his concussion had likely resolved."

¶7 Dr. J. Michael Powers, a board-certified neurologist, conducted a March 2024 independent medical examination. He reviewed relevant medical records and physically examined Halloum. He testified that the psychiatric consult in the hospital thought Halloum's condition was psychological. Dr. Powers had viewed the security camera video and opined that the fall was a "protected fall" because Halloum held his hand out in front of his head as he fell. He concluded that "there's no evidence that he directly hit his head on the floor." Dr. Powers also opined there was no evidence of a mild traumatic brain injury. Dr. Powers believed the fall "was intentional and that no concussion occurred." He explained that upon initial presentation to the hospital, it was reasonable to consider whether Halloum had suffered a traumatic brain injury. As time went on, the doctors thought Halloum may have been suffering from a toxic or metabolic encephalopathy. In the end, Dr. Powers testified, the doctors settled on a psychiatric condition as the explanation for Halloum's unresponsiveness.

**¶8**        Along with testimony from two other witnesses—a private investigator and Black Diamond's human resources director—the ALJ reviewed the medical documentation and security camera footage of the fall. She found Halloum's testimony not credible. She concluded "[Halloum]'s fall was intentional" and thus not compensable. She also concluded Halloum had not shown a work-related injury, crediting Dr. Powers' testimony over Dr. Shayya's testimony.

**¶9**        Halloum sought administrative review of the decision. The ALJ affirmed her decision denying compensability. Halloum then filed this statutory special action. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(B), 23-951(A).

## DISCUSSION

**¶10**        When reviewing workers' compensation awards, "we defer to the ALJ's factual findings but review questions of law de novo." *Avila v. Indus. Comm'n*, 219 Ariz. 56, 57 ¶ 2 (App. 2008). We view the evidence in the light most favorable to upholding an award. *Id*. Further, the ALJ is responsible for resolving conflicts in the evidence. *See Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609 ¶ 25 (App. 2000). We defer to the ALJ's resolution of conflicting evidence and affirm the ALJ's findings if any reasonable theory of the evidence supports them. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975).

**¶11**        Halloum had the burden to show a compensable injury. *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 216 (1968) (claimant must prove entitlement to compensation). To receive compensation, Halloum must show he suffered an injury *by accident* arising out of and in the course of employment. A.R.S. § 23-1021; *Glodo v. Indus. Comm'n*, 191 Ariz. 259, 261 (App. 1997). To be compensable under the statute, an injury must not be purposefully self-inflicted. *Glodo* at 261; A.R.S. § 23-1021 (specifically excluding injuries that are "purposely self-inflicted" from receiving compensation).

**¶12**        In *Glodo*, a worker became frustrated with his supervisor and punched a metal door, breaking his hand. *Glodo*, 191 Ariz. at 261. We held the worker's intentional act was not an "accident" eligible for compensation: "An intentional act of violence that produces an injury that should be expected is not accidental." *Id*. at 262. Here, the ALJ found Halloum intentionally fell. She viewed the security camera footage and concluded that the evidence showed an intentional fall. *Carranza v. Indus. Comm'n*, 22 Ariz. App. 547, 550 (1974) (we presume the ICA considered all

relevant evidence). This conclusion is a reasonable theory of the evidence. Therefore, we will not disturb the award. *Perry*, 112 Ariz. at 398–99.

**¶13**        Halloum argues we should apply the "unexplained fall" doctrine to his case. We disagree. In an unexplained fall case, an injury for which the cause is unknown will be presumed compensable if it occurs in the course and scope of employment. *Circle K Store No. 1131 v. Indus. Comm'n*, 165 Ariz. 91, 96 (1990). Here, Halloum's fall was found to be intentional, which makes the "unexplained fall" doctrine inapplicable.

**¶14**        We also reject Halloum's argument that the fall must be treated as unexplained because Dr. Powers testified outside his area of expertise when he gave his opinion that the fall was a protected fall and therefore intentional. The ALJ, as the trier of fact, was able to view the video footage and determine the nature of the fall without expert testimony. While expert testimony is required to show medical causation, *Hackworth v. Indus. Comm'n*, 229 Ariz. 339, 343 ¶ 9 (App. 2012), whether someone falls intentionally is not a question of medical causation. Further, the ALJ gave Dr. Powers' opinion more weight only regarding "the conflict in the medical evidence." Thus, there is no indication the ALJ improperly weighed or considered Dr. Powers' testimony and report for any impermissible purposes.

**¶15**        Because Halloum was not injured by accident, he is not eligible to receive benefits. We therefore need not address his argument that he suffered a work-related injury.

## CONCLUSION

**¶16**        We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:      JT