2 P.3d 691

**KAIBAB INDUSTRIES, Petitioner Employer,**

**Lumbermen's Underwriting Alliance, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Kim Sinks, Respondent Employee,**

**Johnny Rockets, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**1 CA–IC 99–0068.**

Court of Appeals of Arizona, Division 1, Department C.

May 16, 2000.

Jardine, Baker, Hickman & Houston, P.L.L.C. By Scott H. Houston, Phoenix, for Petitioners.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Law Offices of Chris T. Johnson, P.C. By Tom R. Johnson and Toby Zimbalist, Phoenix, for Respondent Employee.

James F. Crane, Chief Counsel State Compensation Fund By Catherine Fuller, Phoenix, for Respondent Employer and Carrier.

## OPINION

EHRLICH, Presiding Judge.

¶ 1 This is a special-action review of an Industrial Commission award and decision upon review reopening a 1995 back-injury claim of Kim Sinks. The issue raised is the application of the Arizona successive-injury doctrine to an out-of-state worker's compensation claim. *See* ARIZ. R.P. SPEC. ACT. 10 (Supp.1999). We affirm the award and decision upon review.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Ms. Sinks sustained three separate industrial injuries between 1994 and 1997. The first two injuries occurred in Arizona; the last, in Utah. Specifically, the first one occurred in November 1994 when Ms. Sinks strained her back while working at a Johnny Rockets restaurant. She was treated for this injury, and the claim was closed the same month without permanent impairment.

¶ 3 Ms. Sinks' second injury took place on April 9, 1995, while she was working as a gas-station attendant for Kaibab Industries. This back injury was sustained when her right leg slipped off a curb as she was returning from the storeroom to the cashier's booth. She then began to suffer acute pain in her right hip and numbness in her right leg between the knee and ankle. Ms. Sinks was treated, and her claim was closed on August 28, 1995, without permanent impairment. While she returned to work with Kaibab and her condition improved, Ms. Sinks continued to have pain and numbness in her leg.

¶ 4 Ms. Sinks moved to Utah in 1996 and began work at a convenience store not owned by Kaibab. On June 11, 1997, she suffered her third industrial injury when she felt a sharp pain in her back as she attempted to stand after sitting for a break; the pain was similar to that she had felt in April 1995. As a consequence, Ms. Sinks received further medical treatment.

¶ 5 Ms. Sinks filed a claim for benefits under Utah's worker's compensation statute; it was denied. She then filed petitions to reopen her 1994 and 1995 Arizona claims, and they were denied. The claims were consolidated for hearing and disposition.

¶ 6 At the hearing, Ms. Sinks, as well as two board-certified orthopedic surgeons, Irwin Shapiro and Zoran Maric, testified. According to Ms. Sinks, after her 1994 injury, she did not experience any weakness or numbness in her back. Rather, it was only in 1995, when she sustained her second back injury, that she began to feel numbness in her right leg from her calf to her ankle. Although by the time of the hearing she could not specifically recall her 1995 symptoms, she testified that she had experienced ongoing pain associated with her lower back. By the time she moved to Utah, she ex-

plained, her symptoms had become aggravated, such that merely standing up caused her third industrial injury.

¶ 7 Dr. Shapiro examined Ms. Sinks on March 26, 1998. He testified that he had reviewed her earlier medical reports and spoken with Ms. Sinks about her back pain from the three injuries. An MRI showed degenerative disc disease, and a disc herniation. Dr. Shapiro concluded that Ms. Sinks' present pain was causally related to the 1995 injury.

¶ 8 In contrast, Dr. Maric, who examined Ms. Sinks in September 1998, believed that the 1995 injury was unrelated to her 1997 injury. Rather, based on the medical history pertaining to the three injuries and the MRI films, Dr. Maric concluded that Ms. Sinks' symptoms were not necessarily indicative of a herniated disc and that there was no evidence that the 1995 injury had caused any structural change to Ms. Sinks' spine. He felt that, because Ms. Sinks had not experienced constant severe pain but had only reported general complaints of back pain between 1995 and 1997, there was no causal connection between her disc herniation and the 1995 injury.

¶ 9 The ALJ resolved the medical conflicts in favor of Dr. Shapiro and found that Ms. Sinks had suffered a new, additional or previously undiscovered condition relating solely to the 1995 industrial injury. His Decision Upon Hearing and Findings was issued on February 25, 1999, granting Ms. Sinks' Petition to Reopen the 1995 claim but denying her Petition to Reopen the 1994 claim. The ALJ affirmed the Decision Upon Hearing and Findings without modification on April 30, 1999. Lumbermen's timely filed a Petition for Special Action raising two issues:

1. Whether the ALJ erred in failing to apply the successive-injury doctrine; and,

2. Whether the ALJ abused his discretion by adopting Dr. Shapiro's testimony.

## DISCUSSION

### A. Standard of Review

■■■ ¶ 10 We deferentially review factual findings reasonably supported by the record, but we independently review legal conclusions. *See PFS v. Industrial Comm'n,* 191 Ariz. 274, 277, 955 P.2d 30, 33 (1997). In determining the facts, it is the ALJ, not this court, who has the responsibility of resolving conflicts in expert opinions, and we will affirm an ALJ's resolution of conflicting opinions absent an abuse of his discretion. *See Ford v. Industrial Comm'n,* 145 Ariz. 509, 519, 703 P.2d 453, 463 (1985). Thus, as long as the ALJ reaches the right result, even for the wrong reason, the award generally will be affirmed upon review. *See ITT Courier v. Industrial Comm'n,* 141 Ariz. 357, 360, 687 P.2d 365, 368 (1984).

### B. The Successive-injury Doctrine

■■■ ¶ 11 Lumbermen's first argues that the ALJ should have applied the successive-injury doctrine. This doctrine is a specialized application of the general principle that an employer takes the employee as she is. *See Pearce Development v. Industrial Comm'n,* 147 Ariz. 598, 601–02, 712 P.2d 445, 448–49 (1985), *approved in pertinent part,* 147 Ariz. 582, 712 P.2d 429 (1985). It operates as a rule of liability preference such that, when an employee suffers from a new or subsequent industrial injury and there are two potentially responsible employers, liability may be imposed on the employer responsible for the last industrial injury. *Id.* at 602, 712 P.2d at 449; *see also Klosterman v. Industrial Comm'n,* 155 Ariz. 435, 436, 747 P.2d 596, 597 (1987); *Dr. Pepper Co. v. Industrial Comm'n,* 154 Ariz. 563, 567, 744 P.2d 475, 479 (1987). The doctrine thereby serves to assign responsibility to the last responsible employer, regardless of the relative weight of that employer's contribution to the current condition. *See Pearce Development,* 147 Ariz. at 602, 712 P.2d at 449.[1]

---

1. The justification for this non-apportionment is pragmatic:

   [A]pportionment ... would be the ideal theory in a perfect world, i.e., a world in which all previous insurers were within the jurisdiction of the board, and the proportional disability which occurred when each was at risk could be easily measured. Obviously, however, this is not a perfect world....

### 1. Whether the 1997 Incident Constituted a New Injury

¶ 12 Lumbermen's initially argues that the successive-injury doctrine applies because Ms. Sinks suffered a new, distinct compensable industrial injury in 1997 and, therefore, liability rests with the Utah employer. A claimant must file a new injury claim for which the Commission can allocate liability in order for the successive-injury doctrine to apply. *See A.J. Goulder Elec. v. Industrial Comm'n*, 187 Ariz. 263, 267–69, 928 P.2d 687, 691–93 (1996); *Mercante v. Industrial Comm'n*, 153 Ariz. 261, 265–66, 735 P.2d 1384, 1388–89 (1987).[2] By that means, an employee's underlying condition may become the responsibility of an employer if the new work activity "causes organic change in the underlying condition." *Industrial Indemnity, Co. v. Industrial Comm'n*, 162 Ariz. 503, 508, 784 P.2d 709, 714 (1989). A new employer also may be responsible for symptomatic aggravation but only if it amounts to an additional disability. *Id.* at 508–09, 784 P.2d at 714–15. Therefore, when the aggravation is caused by circumstances that would constitute a new injury, the employer is liable for all disabilities flowing from that aggravation. *See Lockhart v. Industrial Comm'n*, 15 Ariz.App. 209, 211, 487 P.2d 430, 432 (1971).

¶ 13 Alternatively, when a change in condition is but an aggravation of the first injury, there is no new injury. *Id.* at 211, 487 P.2d at 432. For instance, if the claimant's current symptoms are an exacerbation of a prior industrial injury, then it does not represent a new injury. *See Siqueiros v. Industrial Comm'n*, 20 Ariz.App. 104, 108, 510 P.2d 415, 419 (1973). Additionally, if the subsequent incident merely provides the opportunity for a manifestation of the pre-existing condition, it is not compensable. *See New Pueblo Constrs. v. Industrial Comm'n*, 115 Ariz. 236, 237, 564 P.2d 925, 926 (1977). Thus, in the absence of a new work-related injury, the successive-injury doctrine is not applicable. *See Dr. Pepper Co.*, 154 Ariz. at 566–67, 744 P.2d at 478–79.

¶ 14 With respect to the 1997 incident, the ALJ made factual findings, supported by the record, which justify his conclusion that Ms. Sinks did not sustain a new injury in 1997. Dr. Shapiro's testimony itself supports a finding that the 1997 incident exacerbated the 1995 condition.[3] Given that we view the evidence in the light most favorable to sustaining the award, *see In re Estate of Bedwell v. Industrial Comm'n*, 104 Ariz. 443, 444–45, 454 P.2d 985, 986–87 (1969), the testimony of Dr. Shapiro is sufficient for us to conclude that the successive-injury doctrine does not apply because no new injury occurred in 1997.

### 2. Out-of-State Claim Does Not Preclude Application of the Successive-injury Doctrine

¶ 15 Although the conclusion that Ms. Sinks did not experience a new injury in 1997 is dispositive, we address Lumbermen's additional arguments because they offer an opportunity to clarify the successive-injury

---

[A]ssigning liability to the employer on risk at the time of the last injury, is easier to administer than the apportionment solution and, in most instances, will provide the highest level of benefits for the claimant.

*Pearce Development*, 147 Ariz. at 602, 712 P.2d at 449, quoting 4 Arthur Larson, The Law of Workmen's Compensation § 95.12 at 17–111 to –112 (1984) (footnotes omitted).

**2.** Even when a claimant simultaneously pursues both a new injury claim and a reopening of a preexisting claim, application of the successive-injury doctrine will not be barred. *See Dr. Pepper Co.*, 154 Ariz. at 566–67, 744 P.2d at 478–79; *O'Donnell v. Industrial Commission*, 125 Ariz. 358, 362, 609 P.2d 1058, 1062 (1980). In *O'Donnell*, we stated:

[I]t is apparent that where the subsequent activity giving rise to a subsequent injury or aggravation related to the primary injury is work related, the claimant may well have two avenues open to him—a reopening of the primary injury or a new claim based upon the work-related activity. Many factors may weigh in the choice of which avenue to trod.... Be that as it may, the initial choice of how a claimant wishes to proceed, by seeking a reopening, by seeking a new injury status, or both, is primarily the responsibility of the claimant....

125 Ariz. at 362, 609 P.2d at 1062.

**3.** Dr. Shapiro noted that Ms. Sinks suffered no leg pain from the 1994 injury. It was only after the 1995 injury that she began to experience the leg pain and numbness.

doctrine. Assuming that Ms. Sinks had sustained a new injury, Lumbermen's contends that the ALJ erred when he implied that an out-of-state new injury claim would preclude the application of the successive-injury doctrine.[4]

■ ¶ 16 According to the Full Faith and Credit Clause, "the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state where it was pronounced." *Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 270, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980), quoting *Hampton v. McConnel*, 16 U.S. 234, 235, 3 (Wheat.) 234, 235 (1818).[5] Thus, one state must recognize those judgments that have become res judicata in every other state. *Id.* at 281, 100 S.Ct. 2647; *see Cofer v. Industrial Comm'n*, 24 Ariz.App. 357, 359, 538 P.2d 1158, 1160 (1975).

■ ¶ 17 Unlike a court of general jurisdiction, the Commission has limited power to recognize the interests of another state because its jurisdiction is limited to questions pertaining to the worker's compensation law,

applying only its state law. *See Thomas*, 448 U.S. at 281–82, 100 S.Ct. 2647. It is only after the Commission enters its award that a state has an interest in preserving the integrity of its award. *Id.* at 283–84, 100 S.Ct. 2647.

■ ¶ 18 Contingent upon judicial review, the Industrial Commission of Arizona establishes the full measure of a petitioner's rights according to Arizona law. Once an award is entered, the state has an interest in preserving the integrity of the award, an interest protected by the Full Faith and Credit Clause. *See id.* Accordingly, other states, such as Utah, must recognize the validity of the decision to reopen the 1995 claim and the award to Ms. Sinks.[6] Thus, the ALJ could apply the successive-injury doctrine to an out-of-state claim once that state enters a final award on the merits.[7]

■ ¶ 19 The caveat to this general assertion, however, is that the successive-injury doctrine only applies when the several potentially liable parties are present in the proceedings. *See Dr. Pepper Co.*, 154 Ariz. at 567, 744 P.2d at 479. Specifically, the suc-

---

4. The ALJ stated: "The successive injury doctrine is a rule of liability preference and not a defense against liability. The claim which is asserted is a claim in the State of Utah with Defendants who are not parties to this proceeding.... Therefore, the successive injury doctrine is found to be inapplicable to the instant proceeding."

5. In *Thomas*, a worker was hired in the District of Columbia and then injured in the scope of this employment in Virginia. He filed for workers' compensation in Virginia and the Virginia Commission awarded him benefits. The worker then filed for compensation in the District of Columbia and was also awarded benefits under its laws.

6. In turn, although the facts do not present this scenario, the Full Faith and Credit Clause protects awards made pursuant to the Utah worker's compensation law. If Utah were to have issued an award for a new claim on behalf of Ms. Sinks, Arizona would have had to acknowledge the new claim.

7. The *Lockhart* case is somewhat analogous to the present one. In that case, the claimant's condition had worsened since his original Arizona compensation award. He underwent surgery for this condition while in California and received benefits pursuant to the California

worker's compensation laws. After the claimant filed a petition to reopen the Arizona claim, however, the Commission denied the petition. We explained that the claimant's only recourse for a new injury is to file a new-injury claim. 15 Ariz.App. at 211, 487 P.2d at 432. However, we noted that, when a new injury occurs in a foreign state, if that state's successive-injury doctrine apportions fault between original and subsequent employers, the rule that the claimant's sole remedy is to file a new claim may be detrimental to full compensation for the injury. *Id.* In light of this conclusion, we set aside the award on the following basis:

> It has long been the policy in Arizona that an injured workman is entitled to reopen his claim upon a showing that his condition has changed since the original award due to an aggravation of that original injury.... To extend the new-claim-aggravation rule to injuries occurring in other jurisdictions, whose laws both substantive and procedural may be different from those of Arizona, would thwart this policy.

*Id.* (citation omitted).

Although *Lockhart* involved an apportionment jurisdiction, the case applies generally to out-of-state new-injury claims. As a result, we recognize the laws of a foreign jurisdiction in order to uphold the intent of the worker's compensation statute to compensate injured workers.

cessive-injury doctrine requires that the ALJ decide who from among the " 'several carriers present in the proceedings must bear the loss.' " *Id.*, quoting *Mercante*, 153 Ariz. at 266, 735 P.2d at 1389. Therefore, without a responsible employer present in the proceedings, *see Pearce Development*, 147 Ariz. at 602, 712 P.2d at 449), the Commission cannot give full faith and credit to a foreign claim.

¶ 20 Ms. Sinks did not have a valid new-injury claim in Utah to receive full faith and credit. Moreover, the ALJ could not allocate liability to the new-injury claim in Utah because the Utah employer was not present in the proceedings.[8] Thus, while we disagree with the ALJ's suggestion that Arizona will not recognize new-injury claims in other jurisdictions, we agree that he had no authority to apply the successive-injury doctrine in this case. There was no valid new-injury claim in Utah, and the Utah employer was not present.

### C. Sufficiency of Evidence to Reopen a Claim

¶ 21 Lumbermen's next argues that it was an abuse of discretion for the ALJ to reopen the 1995 claim because the testimony ultimately adopted by the ALJ was factually inaccurate. Essentially, Lumbermen's asks that we re-weigh the evidence. This we cannot do. *See Ford*, 145 Ariz. at 519, 703 P.2d at 463.

¶ 22 To reopen a claim because of a changed or previously undiscovered condition, the claimant must first demonstrate the existence of the condition and must then

show a causal connection between her condition and her previously closed claim. *See* ARIZ.REV.STAT. § 23–1061(H); *Stainless Specialty Mfg. Co. v. Industrial Comm'n*, 144 Ariz. 12, 19, 695 P.2d 261, 268 (1985). If the injury is not readily apparent to a layman, the existence of a condition can be established only by expert medical testimony. *See Fry's Food Stores v. Industrial Comm'n*, 161 Ariz. 119, 121, 776 P.2d 797, 799 (1989). Lumberman's does not contest the existence of Ms. Sinks' physical condition but the causal connection between her current condition and her 1995 claim.

¶ 23 Generally, a claimant bears the burden of proving a causal connection between her condition and employment. In this context, an expert's medical testimony may become so diminished by proof of an inaccurate factual background that the testimony does not meet the burden of proof necessary to create the causal nexus. *See Russell v. Industrial Comm'n*, 98 Ariz. 138, 143, 402 P.2d 561, 564 (1965). If the ALJ relies upon an inaccurate factual foundation in issuing the award, the award must be set aside. *See Fry's Food Stores*, 161 Ariz. at 122, 776 P.2d at 800; *see also Desert Insulations, Inc. v. Industrial Comm'n*, 134 Ariz. 148, 151, 654 P.2d 296, 299 (1982).

¶ 24 Lumbermen's argues that Dr. Shapiro's testimony regarding the 1995 industrial injury lacked a sufficient foundation because he relied on Ms. Sinks' inaccurate factual history of ongoing calf numbness. It claims that Dr. Shapiro's reliance upon Ms. Sinks' admittedly faded recollection of symptoms, coupled with his failure to review her

---

8. In the context of worker's compensation, the Full Faith and Credit Clause does not preclude successive worker's compensation awards for a single industrial injury. *Thomas*, 448 U.S. at 286, 100 S.Ct. 2647. In fact, the Supreme Court has held that a state cannot engage in the "unnecessarily aggressive application" of the Full Faith and Credit Clause so as to impede the collection of benefits by an injured worker. *Id.* at 285, 100 S.Ct. 2647. For instance, if one state issues an award for compensation, a second state cannot deny benefits by claiming that the Full Faith and Credit Clause prevents it from granting benefits. Rather, a state has no legitimate interest in preventing another state from granting a supplemental compensation award when the second state would have the authority to do so. *Id.*

The state's interest in providing adequate compensation to the injured worker is best served by this interpretation. *Id.* at 262, 100 S.Ct. 2647.

Ms. Sinks cited cases involving Arizona and out-of-state claims for a single industrial injury. *See Lowery v. Industrial Comm'n*, 123 Ariz. 108, 109, 597 P.2d 1011, 1012 (1979); *City Products Corp. v. Industrial Comm'n*, 19 Ariz.App. 286, 288, 506 P.2d 1071, 1073 (1973). These cases allow the Arizona claim with an offset for the out-of-state benefits. *See Lowery*, 123 Ariz. at 112, 597 P.2d at 1015; *City Products Corp.*, 19 Ariz.App. at 289, 506 P.2d at 1074. In this regard, Ms. Sinks agrees that Lumbermen's would be entitled to a credit for any worker's compensation benefits awarded in Utah.

documented medical history from 1994 and 1995, undermines the factual foundation for his medical opinion. It concludes that the ALJ's decision to reopen the 1995 claim constitutes an abuse of his discretion.

¶ 25 When reasonable evidence exists to support the ALJ's conclusion, we are bound by his resolution of conflicting testimony. *See Fry's Food Stores*, 161 Ariz. at 121, 776 P.2d at 799; *Stainless Specialty Mfg. Co.*, 144 Ariz. at 19–20, 695 P.2d at 268–69. Indeed, it is the duty of the ALJ to resolve conflicts in the evidence and to determine which opinion is more probably correct. *See Lazarin v. Industrial Comm'n*, 135 Ariz. 369, 373, 661 P.2d 219, 223 (1983). Only if the award is unsupported by any reasonable theory of evidence will we reverse. *See Wal–Mart v. Industrial Comm'n*, 183 Ariz. 145, 147, 901 P.2d 1175, 1177 (1995).

¶ 26 This award is fully supported by the record. The ALJ considered the evidence in its entirety and, to the extent that there was a conflict between Dr. Maric and Dr. Shapiro, he resolved the case in favor of Dr. Shapiro's opinion as being more probably correct and well-founded. *See In re Estate of Bedwell*, 104 Ariz. at 445, 454 P.2d at 987.[9] And, although Ms. Sinks' memory was not crystalline, her memory was not so flawed as to render Dr. Shapiro's opinion without a factual basis. We find no error in the ALJ's conclusion that Ms. Sinks was entitled to have the 1995 claim reopened.

*CONCLUSION*

We affirm the award and decision upon review.

CONCURRING: EDWARD C. VOSS, Judge, and JON W. THOMPSON, Judge.

---

9. In particular, he noted that the below-knee radicular findings were medically documented for the first time after the 1995 injury and that a simple back sprain generally would not cause these symptoms. Dr. Shapiro commented that while radicular symptoms from a herniated disc may temporarily resolve, despite any discrepancies between Sinks' history and the medical reports, Ms. Sinks recalled having lateral calf numbness and back stiffness after she returned to regular work at Kaibab Industries.