NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MIGUEL ESPITIA,
*Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

USW/CAT CONSTRUCTION AND
RESTORATION EXPERTS
CASTASTROPHE TEAM, INC.,
*Respondent Employer*,

SPECIAL FUND DIVISION/NO
INSURANCE SECTION,
*Respondent Party in Interest*.

No. 1 CA-IC 18-0076
FILED 6-18-2019

Special Action - Industrial Commission
ICA No. 20172-420049
The Honorable C. Andrew Campbell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Snow, Carpio & Weekley, PLC, Phoenix
By Erica Rose Gonzalez-Melendez
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Stacey A. Rogan
*Counsel for Respondent ICA*

Hendrickson & Palmer, PC, Phoenix
By Adam P. Palmer
*Counsel for Respondent Employer*

Industrial Commission of Arizona, Phoenix
By Stephen D. Ball
*Counsel for Respondent Party in Interest*

---

## MEMORANDUM DECISION

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Peter B. Swann joined.

---

**J O H N S E N**, Judge:

**¶1** Miguel Espitia appeals by special action the Decision Upon Review of the Industrial Commission of Arizona ("ICA"). Espitia argues the Administrative Law Judge ("ALJ") erred by finding he was not an employee of USW/CAT Construction and Restoration Experts Catastrophe Team, Inc. ("USW") at the time of the accident. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2** Espitia fell three or four feet from a ladder at a job site on July 14, 2017, and landed on his right knee. The knee swelled, caused him "severe pain." Physicians at urgent care detected a "small knee joint effusion" and instructed Espitia to "[r]est, ice and elevate the affected area" and use a brace on the knee.

**¶3** Espitia began using crutches and did not return to work. He later underwent an MRI and an x-ray and visited Dr. Jason Ferrari. Ferrari's review of the MRI and x-ray revealed a "lateral femoral posterior condylar area" fracture, and he noted Espitia "may need a knee replacement in the future." Ferrari instructed Espitia to refrain from working for an additional month. After requesting a change in doctor through the ICA, Espitia visited

2

Dr. Brad Cucchetti, who ordered additional tests "to evaluate any progress or subsidence of the fracture."

¶4        Meanwhile, Espitia filed a claim for worker's compensation benefits, listing USW as his employer. The Special Fund Division – No Insurance Section originally denied Espitia's claim but later rescinded its denial, accepted the claim. USW timely filed a Request for Hearing, asserting it was not Espitia's employer at the time of the accident.

¶5        At the hearing, ALJ Gaetano Testini heard testimony from Espitia, Joel Lewis and Alan Perry, USW's corporate officer and director. The ALJ also received Espitia's medical records; images of text messages between Espitia and Lewis and between Espitia and Mike Perry, Alan's son; images of canceled checks made out to Espitia from USW; and Home Depot receipts showing purchases made by Espitia on behalf of USW.

¶6        Espitia testified he had worked "with" USW beginning in November or December of 2015. Explaining how he began to do so, Espitia said he ran into Lewis, whom he had known for many years, and told Lewis he was available if he had any work for Espitia. Thereafter, Espitia said, he began working with Lewis on various projects. Espitia first helped Lewis dig ditches for an electric company, and next assisted Lewis with a patio demolition for USW. Espitia continued to help Lewis with various tasks on USW projects, including painting, carpentry and cleaning. He testified Lewis told him what time to start work and what work he was to do. When Espitia finished a project, he would let Lewis know. He testified he did not know whether Lewis checked his work, but that he would send Lewis photos when he was finished with a project. If Espitia found something "wrong" when working on a project, he would tell Lewis, and Lewis would tell him what needed to be done. Espitia testified he would use his own "air guns, . . . a compressor, a generator, drills, things like that," but sometimes he needed to use other tools belonging to Lewis or others on the job site.

¶7        USW originally paid Espitia in cash but in 2017 began paying him by check. USW did not deduct taxes from his pay, and Espitia admitted that he knew he would have to pay taxes on his wages. When Espitia filled out a W-9 form in May 2017, he checked the box indicating he was an individual/sole proprietor but testified at the hearing he did not remember doing that. Espitia testified he would let Lewis know when he was going to take vacation days. He received no vacation pay, although he testified USW gave him $50 on his last vacation day; nor did he receive sick pay, health insurance or other benefits.

¶8          Lewis testified he (Lewis) was a self-employed contractor who did work mainly for USW but also worked for other contracting companies.  He testified he managed Espitia and others as subcontractors; he would tell Espitia where to go to work each day, when to start the work if there was a set appointment and would check Espitia's work to ensure that it was done correctly.  Lewis testified Espitia worked five days some weeks, but two or three days other weeks.  He also testified Espitia was free to set his own schedule, could start work when he wanted, take breaks when he wanted, leave when he wanted, could refuse any work offered him and did not need to get approval when he wanted to take vacation time or sick days.

¶9          In his Decision Upon Hearing, the ALJ found Lewis's and Perry's testimony to be "more probably correct" and resolved all conflicts in the testimony in their favor.  The ALJ concluded Espitia was neither a direct nor statutory employee of USW at the time of the accident and denied Espitia's claim.  Espitia timely filed a request for review.  Before that review took place, ALJ Testini resigned, and a new ALJ was assigned.

¶10         ALJ C. Andrew Campbell reviewed and affirmed the Decision Upon Hearing.  ALJ Campbell acknowledged he was "bound by the credibility findings made by the presiding ALJ at hearing" and ruled that by finding Lewis's and Perry's testimony "more probably correct," ALJ Testini had made such a credibility finding.  Based on the facts as found by ALJ Testini, ALJ Campbell concluded as a matter of law that USW was neither Espitia's direct nor statutory employer at the time of the accident and affirmed the Decision Upon Hearing.

¶11         Espitia timely petitioned for special action relief.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2019), 23-951(A) (2019) and Arizona Rule of Procedure for Special Actions 10.[1]

## DISCUSSION

¶12         Espitia raises two challenges to the award.  First, he contends neither ALJ made a credibility finding, which he argues was required to dispose of the matter.  He argues that although ALJ Testini found that Lewis's and Perry's testimony was "more probably correct," ALJ Testini did not make a credibility finding.  Second, Espitia argues the award should be

---

[1]          Absent material revision after the relevant date, we cite the current version of a statute or rule.

overturned because "the evidence did not support the finding . . . that USW did not have the right to control [Espitia's] work and [Espitia] was therefore not a direct employee of USW."

¶13        "In reviewing ICA findings and awards, we defer to the ALJ's factual findings but review questions of law de novo." *Landon v. Indus. Comm'n*, 240 Ariz. 21, 24, ¶ 9 (App. 2016). We view the evidence in the light most favorable to upholding the ALJ's award, and when reasonable evidence supports the ALJ's decision, we are bound by the ALJ's resolution of conflicting testimony. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 605, 609, ¶¶ 10, 25 (App. 2000).

¶14        Whether an individual is an employee or an independent contractor turns on the alleged employer's "right to control or supervise the method of reaching a specific result." *Home Ins. Co. v. Indus. Comm'n*, 123 Ariz. 348, 350 (1979); A.R.S. § 23-902 (2019). When considering an employer's right to control, we look to the totality of the facts and circumstances and consider several indicia of control, including

> the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business.

*Home Ins.*, 123 Ariz. at 350.

¶15        Contrary to Espitia's contention, neither ALJ was required to make a specific finding on the credibility of the witnesses in this case because the testimony bearing on whether USW had the right to control Espitia's work was not substantially inconsistent. Espitia did not assert USW officially hired him, and he admitted that when work was slow at USW, he worked for an "investor" and another company. Although Espitia testified he used USW's or Lewis's equipment, he also admitted – and text messages showed – he often brought his own tools to project sites. Espitia testified he "would let [Lewis or USW] know" when he planned to take vacation days, but he never suggested Lewis or USW needed to approve him taking time off. In fact, Espitia testified that when Lewis asked him to work on a project, he could have declined the work if he "had a lot of money." Finally, Espitia, Lewis and Perry agreed USW paid Espitia by check without withholding taxes and did not disagree that Espitia performed work in the usual and regular course of USW's business.

¶16        As for Espitia's second argument, the evidence recounted above provided substantial support for the following findings by ALJ Testini:

> Here, the applicant was not hired by USW, did not work exclusively for USW, did not use equipment provided by USW, did not need to have vacation approved and could refuse work without fear of [repercussions]. There is no evidence that USW exercised, or had the right to exercise, control over the details of the applicant's work. USW paid the applicant by check, although no taxes were taken out of the checks, and the work performed by the applicant was in the usual and regular course of USW's business.
>
> \*      \*      \*
>
> When all of the evidence is considered in its entirety and upon a resolution of the conflicts in the evidence it is found herein that applicant has not established by preponderance of the evidence that he was a direct or statutory employee of the defendant employer, therefore he did not sustain a compensable injury on July 14, 2017, as to the defendant employer. Applicant is thus not entitled to benefits pursuant to the Workers' Compensation Act of the State of Arizona.

¶17        Espitia argues the text messages showed Lewis and Mike Perry directed the details of his work, including the time he "was to show up and what was to be done." Although the text messages showed Lewis directed Espitia to complete certain projects on certain days, the messages did not show Lewis controlled the details of Espitia's work or Espitia's "method of reaching a specific result." *Home Ins.*, 123 Ariz. at 350. In one message, Lewis *asked* Espitia if Espitia wanted to work the following day; in another, Espitia asked Lewis whether there will be "any work for this week." In a separate series of messages, Lewis asked whether Espitia could work Tuesday, Wednesday and Friday, to which Espitia responded he could work Tuesday, Wednesday and Saturday instead. Additional text messages also showed Espitia working independently at job sites without supervision from Lewis.

¶18        In sum, the evidence failed to show Lewis or USW controlled Espitia's schedule or method of work. Viewed in the light most favorable to upholding the ALJ's award, the texts and the testimony support the finding that Lewis and USW did not have the right to control Espitia's work

pursuant to § 23-902 and *Home Insurance.* Accordingly, the ALJ properly concluded Espitia was not a direct employee of either Lewis or USW and therefore was not entitled to compensation for his injury.[2]

## CONCLUSION

**¶19**         For the foregoing reasons, we affirm the Decision Upon Review.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[2]         By failing to present argument, Espitia has waived any challenge to the ALJ's conclusion that USW was not Espitia's statutory employer under § 23-902(B). *MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011).