NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DIANNA L. STRIED,
*Petitioner Employee*,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

ANGRY CRAB SHACK, LLC,
*Respondent Employer*,

AMTRUST INSURANCE COMPANY OF KANSAS, INC.,
*Respondent Carrier*.

No. 1 CA-IC 18-0082
FILED 10-1-2019

Special Action - Industrial Commission
ICA No. 20170-620416
INSCA 2550244-1
The Honorable Layna Taylor, Administrative Law Judge

**AFFIRMED**

COUNSEL

Snow Carpio & Weekley, PLC, Phoenix
By Erica Rose Gonzalez-Melendez
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Broening Oberg Woods & Wilson, PC, Phoenix
Jerry T. Colleen, Alice Jones
*Counsel for Respondent Employer/Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Chief Judge Peter B. Swann joined.

---

**W E I N Z W E I G**, Judge:

**¶1**　　　This is a special action review of an Industrial Commission of Arizona ("ICA") decision that Dianna L. Stried's industrial injury is stationary with no permanent impairment or need for supportive care. Stried argues the administrative law judge ("ALJ") erroneously resolved conflicting medical evidence. Because she has shown no reversible error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　Stried was a manager at the Angry Crab Shack restaurant in February 2017 when she injured her right hand in an industrial accident. Her hand "didn't feel right" and "ache[d]" after pushing a heavy shelving unit into place, although "there was no pop, there was no snap, there was nothing like that." She worked the full day without restrictions. Later that night, however, Stried noticed "something [was] not right" with her hand, and then reported the incident to her general manager.

**¶3**　　　Stried worked for 17 more days before seeking medical attention at NextCare. She complained about "wrist pain" to NextCare staff and was diagnosed with a fractured lunate bone. She was given a splint and told to visit a hand specialist.

**¶4**　　　The same day, Stried applied for workers compensation insurance. Respondent AmTrust Insurance Company of Kansas, Inc. accepted her claim based on available evidence. She kept working at the restaurant "within the restrictions given by NextCare."

2

¶**5**        Nine more weeks elapsed before Stried visited Dr. Burgess, the hand specialist.  After reviewing her wrist x-ray, Dr. Burgess diagnosed Stried with Kienbock's Disease and possible Carpal Tunnel Syndrome.  Kienbock's Disease occurs when the lunate bone does not receive enough blood and eventually dies.

¶**6**        From there, Stried received independent medical examinations from two board-certified orthopedic specialists with hand subspecialties.  Dr. Josh Vella examined Stried and reviewed her medical records in August 2017 on behalf of the respondent insurance carrier.  He diagnosed her with stage-four "[r]ight wrist Kienbock's" and "[r]ight wrist carpal tunnel," but did not attribute her condition to a lunate fracture or the industrial accident. Stried then hired Dr. Mitchel Lipton to examine her and her medical records in October 2017.  Dr. Lipton disagreed with Dr. Vella.  Dr. Lipton opined that Stried's condition was caused by the February 2017 work accident, which fractured her lunate bone.

¶**7**        AmTrust Insurance terminated Stried's benefits after Dr. Vella provided his medical opinion, and Stried sought a formal Industrial Commission hearing when Dr. Lipton reached a different conclusion.

¶**8**        Over three days, an ALJ received testimony from Stried, Dr. Lipton and Dr. Vella.  Dr. Lipton was more equivocal at the hearing.  He testified that Stried "could have" fractured her right lunate bone in the work accident, but discounted the possibility when told she suffered no immediate pain.  Dr. Lipton also conceded that Kienbock's Disease is "[s]low developing," Stried had an advanced stage of the disease and ulnar minus variance could lead to the disease.

¶**9**        Meanwhile, Dr. Vella opined that Stried could not have developed Kienbock's Disease from pushing the shelving unit in February 2017 because she had an advanced form of the slow-moving disease in May 2017.  He also testified that Stried did not fracture her lunate bone at the time because she would have felt immediate pain.  Asked whether Stried's work injury could have "aggravated or accelerated" her Kienbock's Disease, Dr. Vella replied that it was "unlikely" to the same extent that "a meteor could fall in the room right now . . . ."  Nevertheless, Dr. Vella said his opinion would not have changed even with evidence of "a rapid acceleration" in the disease following Stried's industrial injury.

¶**10**        The ALJ found that Stried's industrial injury was "medically stationary without permanent disability effective August 4, 2017," and her award was limited to "[m]edical, surgical, and hospital benefits . . . from

February 7, 2017, through August 4, 2017." The ALJ resolved the conflict in medical evidence "in favor of the opinions of Dr. Vella as being more probably correct and well founded." The ALJ summarily affirmed the award after Stried's request for review.

¶11        Stried timely petitioned for special action review. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(2), 23-951(A) and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶12        This court will not set aside the ALJ's award unless it "cannot be supported by any reasonable theory of the evidence." *Gamez v. Indus. Comm'n*, 213 Ariz. 314, 315, ¶ 9 (App. 2006). When presented with conflicting expert testimony on medical issues, the ALJ must determine which testimony is more probably correct. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398 (1975); *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶¶ 25-26 (App. 2000) (holding the ALJ has the exclusive duty to do so). We affirm the ALJ's resolution of conflicting expert opinions absent an abuse of discretion, *Kaibab*, 196 Ariz. at 605, ¶ 10, meaning the ALJ's decision "cannot be reasonably supported on any reasonable theory of [the] evidence," *Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987).

¶13        Stried contends the ALJ erred "in finding the opinion of Dr. Vella more probably correct than Dr. Lipton" because Dr. Vella lacked foundation for his opinion and made a dismissive comment during the hearing. We find no error.

¶14        The record includes ample foundation for Dr. Vella's medical opinion. Dr. Vella is a board-certified orthopedic specialist. He personally examined Stried and reviewed her medical records in forming his opinion. *See Royal Globe Ins. Co. v. Indus. Comm'n*, 20 Ariz. App. 432, 434 (1973) ("[A] medical opinion must be based upon the finding of medical facts by the doctor involved."). Stried has not shown that Dr. Vella ignored or neglected to consider her medical records. Stried's counsel had every chance to cross-examine Dr. Vella before the ALJ on the basis of his medical opinion. Even more, Dr. Lipton offered a less strident medical opinion at the hearing, conceding flaws in Stried's theory. At bottom, Stried wants us to "re-weigh the evidence in the light most favorable to reversal," *Wal-Mart v. Indus. Comm'n*, 183 Ariz. 145, 147 (App. 1995), but "[t]his we cannot do," *Kaibab*, 196 Ariz. at 608, ¶ 21.

¶15        Stried's second argument also misses the mark. She seems to argue that Dr. Vella's opinion should be stricken or discounted because he

compared the likelihood of her theory to a meteor falling in the courtroom. She offers no authority for her argument, which is thus waived. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 492 n. 2 (App. 2007); *see also* ARCAP 13(a)(6).

**CONCLUSION**

**¶16**         We affirm the Commission's decision and award upon review.



AMY M. WOOD • Clerk of the Court
FILED:  AA