NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IRENE MARCHESE, *Petitioner Employee,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

SENIOR LIFESTYLE HOLDING COMPANY LLC, *Respondent Employer,*

ACCIDENT FUND NATIONAL INSURANCE CO, *Respondent Carrier.*

No. 1 CA-IC 20-0049
FILED 12-9-2021

Special Action - Industrial Commission
ICA Claim No. 20180-080067
The Honorable Paula R. Eaton, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Irene Marchese, Buckeye
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By Stephen C. Baker
*Counsel for Respondent Employer and Carrier*

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Brian Y. Furuya joined.

**B R O W N**, Judge:

**¶1**        Irene Marchese challenges an Industrial Commission of Arizona ("ICA") award that closed her workers' compensation claim, finding her medically stationary and without permanent impairment. She argues the evidence shows she still requires active treatment for her work injury. Because reasonable evidence supports the administrative law judge's ("ALJ") resolution of conflicting expert testimony, we affirm.

### BACKGROUND

**¶2**        In December 2017, while working as a caregiver in an assisted living facility for respondent Senior Lifestyle Holding Company LLC, Marchese slipped in the laundry room and was injured. She described the mishap by stating that she stepped in a puddle of spilled laundry soap and slid across the floor, hitting her left shoulder against a washing machine and, "did the splits" down to the floor. She did not hit her head. She got up immediately and went to a nearby emergency room, complaining of a back injury.

**¶3**        Medical records show that Marchese had received treatment for multiple health conditions before the laundry room injury occurred, including neck problems, chronic pain syndrome, and back pain. After the injury, she went to the emergency room several times over the following months, primarily due to neck and back pain. She also saw her primary care physician ("PCP"), Dr. Guice, reporting that she fell on her left side. Marchese's workers' compensation claim was accepted and she received treatment through the end of August 2018, when the respondent carrier closed the claim with no permanent impairment. Marchese protested the closure and requested a hearing.

**¶4**        Over the course of several days, the ALJ heard testimony from Marchese, along with seven experts (four treating physicians and three independent examiners). Dr. Guice testified that she was aware of Marchese's laundry room fall but was focused on treating Marchese's non-

2

industrial conditions, allowing other doctors to treat the work injury. Dr. Guice declined to relate any of Marchese's specific conditions to the fall; instead, Dr. Guice simply stated that Marchese's neck pain complaints increased after the fall.

¶5            Dr. Brown and Dr. Jackson, orthopedic surgeons who treated Marchese, also testified. Both agreed that Marchese had pre-existing degenerative conditions in her cervical spine and left shoulder at the time of the fall. Neither of them reviewed the emergency room records created soon after the work injury. Dr. Jackson related Marchese's back condition to the fall but did so based solely on her self-report to him. Dr. Brown testified that the fall at work "may have" exacerbated an already present arthritic condition in Marchese's left shoulder.

¶6            Dr. Kahlon, a neurologist who treated Marchese in 2019, testified that some of her neurological complaints "could be" related to the fall at work but would need further testing to make a final determination regarding her cognitive abilities. He was told she had a "whiplash injury" due to the fall at work and resulting neck pain. Dr. Kahlon admitted he had not reviewed the contemporaneous emergency room records. Although his initial exam revealed evidence of short-term memory loss, he was not aware that Marchese had been taking opioids since 2017 when he first saw her for treatment. Dr. Kahlon admitted that chronic use of opioids could cause cognitive issues.

¶7            Dr. Stevens, an orthopedic surgeon specializing in spinal surgery, testified in support of his independent medical examination of Marchese's neck in October 2019. He testified that before her fall in December 2017, Marchese had undergone a cervical fusion due to degenerative discs. Dr. Stevens opined that another cervical fusion surgery she had in July 2019 was not a result of the fall, but was based on progression of her degenerative disc disease and thus unrelated to the work injury. He concluded she had no permanent impairment to her spine due to her fall at work.

¶8            Dr. Bailie, an orthopedic surgeon, testified regarding his independent medical examination of Marchese's left shoulder. He reviewed medical records, conducted a limited physical examination (she complained of pain and would not let him look at her left shoulder without a sling on it) and testified that Marchese embellished her symptoms. He testified that he viewed a surveillance video and reviewed a report that showed Marchese using her shoulder "quite readily." He reported that her left shoulder was medically stationary with no permanent impairment. He

testified that the left shoulder surgery she had in 2019 was related to her degenerative condition and not the fall at work.

¶9            Dr. Kahn, a neurologist, conducted an independent medical examination of Marchese in April 2019.  He reviewed medical records, interviewed and examined Marchese, and testified he could find no objective physical findings for any head trauma or post-concussion syndrome.  Any neurological problems she may have, he stated, were not the result of the fall at work.

¶10           In the ICA award that followed, the ALJ summarized the testimony and weighed the evidence, finding that Drs. Stevens, Bailie, and Kahn were more persuasive than the treating doctors.  The ALJ concluded that Marchese was medically stationary as of August 29, 2018, with no permanent impairment and no need for supportive care.  After her request for administrative review was summarily denied, Marchese brought this appeal.

## DISCUSSION

¶11           We defer to the ALJ's factual findings when reviewing workers' compensation awards but independently review legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We will affirm an award "if it is reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).  When an injury is a type that is not apparent to a layperson, especially concerning the causal link between the event and the injury, expert medical evidence is necessary.  *See W. Bonded Prod. v. Indus. Comm'n*, 132 Ariz. 526, 527 (App. 1982).  When the evidence conflicts or permits two different inferences, the ALJ has the discretion to resolve those conflicts and choose either inference; we will not disturb that choice unless it is wholly unreasonable.  *Waller v. Indus. Comm'n*, 99 Ariz. 15, 18 (1965).

¶12           Nothing in the record suggests the ALJ's decision to give the independent examining doctors' opinions more weight than the treating doctors' opinions was unreasonable. The independent examiners are qualified experts, explained their conclusions, and described the information they used to arrive at them.  Marchese's dissatisfaction with and disagreement with the ALJ's decision to follow the IME physician's opinion over a treating physician is not grounds to reverse an award.  As noted, we defer to an ALJ's resolution of conflicting evidence unless it is wholly unreasonable.  *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46

(1988) ("Many factors enter into a resolution of conflicting evidence, including whether or not the testimony is speculative, consideration of the diagnostic method used, qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred.").

**¶13**     In her briefing, Marchese recounts the incident and describes her many health issues, all of which she attributes to her fall at work.[1]  But we do not reweigh the evidence on appeal.  *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 608, ¶ 21 (App. 2000).  The ALJ's resolution of the conflicts between the expert opinions is reasonable and supported by evidence in the record.

## CONCLUSION

**¶14**     We affirm the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

[1]     In her reply brief, Marchese attached a medical record from April 2021 that is not part of the ICA record.  Thus, we do not consider it. *See* ARCAP Rule 11(a) (record on appeal consists of evidence submitted to the lower court).