NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PIERPONT MANUFACTURING LLC, *Petitioner Employer*,

FEDERATED MUTUAL INSURANCE CO, *Petitioner Carrier*,
*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

NICHOLAS TERANDO, *Respondent Employee.*

No. 1 CA-IC 23-0025
FILED 05-23-2024

Special Action - Industrial Commission
ICA Claim No. 20213480246
Carrier Claim No. 646955-1
The Honorable Robert E. Trop, Administrative Law Judge

**AFFIRMED**

COUNSEL

Jardine Baker Hickman & Houston PLLC, Phoenix
By Stephen C. Baker
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Brian Clymer, Attorney at Law, Tucson
By Laura Clymer
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**C R U Z**, Judge:

¶1        The Industrial Commission of Arizona ("ICA") issued an award that found Nicholas Terando suffered a compensable injury while working for Pierpont Manufacturing, LLC. Pierpont and its insurance carrier, Federated Mutual Insurance Co., challenge that award, arguing that the evidence does not support a conclusion that Terando was injured at work. We find substantial evidence to support the award and affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        The facts are uncontested. Terando worked several years for Pierpont before his injury. While at work one day, Terando was not feeling well and went to his car to lay in the reclined seat. He was later found passed out, lying face down on the ground next to his car. He was hospitalized and told he had had a stroke. Believing that his condition was caused by his activities at work the week before the stroke, he filed a claim for worker's compensation. Pierpont and Federated ("Petitioners") denied the claim. Terando requested a hearing, at which the following facts emerged.

¶3        Terando tested positive for COVID-19 about a month before he passed out at work. After ten days, he recovered and returned to work. On Friday, December 3, 2021, he installed a heavy steel rain hood on a building without assistance. The hood was clamped to a forklift and held about eight feet above the ground next to the building. Terando did not later remember the installation details but believes that he bore some of the weight with his head to help steady the hood at some point as he was installing it. That night at home after work, he was dizzy and complained to his girlfriend that he had "wrenched his neck." He continued to have neck pain, dizziness, and nausea over the weekend. He did not work on Monday, December 6 instead, he saw a chiropractor who adjusted his back and neck and gave him mild relief. He worked the following Tuesday and Wednesday without complaint. On Thursday, December 9, he worked for

a bit in the morning but became dizzy and had to sit down. He then went to his car and passed out.

¶4 At the hearing, Terando called medical expert Dr. Lynn Ashby, a neurologist who treated him while hospitalized. She testified that his official diagnosis was bilateral vertebral artery dissections that caused cerebellar strokes. She explained that dissections occur when there is trauma to the artery and thin pieces of the inner lining of the vertebral artery tear, causing blood platelets to swarm to the area for repair. After a while, those coagulated bits can break off and cause a stroke. The tears can be caused by unusual neck movements or "torquing." She described this torquing as any movement of the neck to an "acute, more than normal acute angle in any direction. . . ."

¶5 Dr. Ashby explained that the events resulting from the tears can manifest in two ways, either with immediate and acute symptoms such as dizziness and nausea or the way that Terando manifested the condition, with a prolonged development of stroke symptoms, almost always starting with neck pain. She explained that people often seek help from chiropractors or massage therapists because they believe they hurt their neck muscles or joints. What is actually happening are signs of a stroke.

¶6 Dr. Ashby testified that COVID can sometimes cause a stroke, but she ruled out COVID as a cause for Terando's strokes in favor of trauma because strokes caused by COVID are "generally not like this." COVID causes hypercoagulability in the blood, which builds up and blocks veins in the brain. In her opinion, COVID causes a different kind of stroke than the type Terando suffered. Because imaging showed damage to his arteries, she ruled out COVID in favor of trauma to the arteries induced by torquing. When asked to assume that Terando used his head to steady a 70-pound metal hood against a building while affixing it and to answer whether that type of activity could cause or contribute to the arterial dissections he experienced, Dr. Ashby declined, saying,

> I don't know if I can answer that with confidence, because, again, it's what – it's the position that the head finds itself in. Not so much pressure on the head, but it's the torquing position, acute torque of the neck in any direction.

Petitioners' counsel did not ask Dr. Ashby any questions on cross-examination.

¶7          Petitioners called Dr. Leo Kahn to testify on their behalf. Dr. Kahn is a neurologist who performed an independent medical examination ("IME") by examining Terando and reviewing the relevant medical records. He opined that the cause of the strokes was the COVID-19 infection Terando experienced in November. A primary basis for his opinion was that Terando did not report any work injury before the stroke, including after installing the metal hood. For that reason, he ruled out that any neck motion caused the dissections and concluded that the COVID-19 infection damaged the inner walls of the arteries.

¶8          The parties filed simultaneous post-hearing memoranda as closing arguments. Petitioners argued that the most likely explanation for the injury was the COVID-19 infection in November, per Dr. Kahn's testimony. They argued that because Terando could not remember any specific torquing head movement on December 3 and because Dr. Ashby could not identify any torquing head movement that would have caused damage to the arteries, Terando failed to prove his claim. Terando argued that the evidence and Dr. Ashby's opinion were sufficient to find that the injury occurred while he was working on December 3, 2021.

¶9          The ICA issued an award finding a compensable injury. The administrative law judge ("ALJ") analyzed the evidence and considered the medical opinions. The award gave more weight to Dr. Ashby's opinion that Terando's strokes were not caused by COVID but by a torquing motion that caused trauma to the arteries. The award found Terando's and his girlfriend's testimony credible and that the sequence of events, primarily the neck pain that started on December 3, 2021, supports "the reasonable inference that the genesis of the vertebral artery dissections were injuries 'arising out of' and 'in the course of work,' that ultimately manifested as the strokes sustained on December 9, 2021."

¶10          Petitioners moved for review and reconsideration. They argued that whether Terando moved his head on December 3 in a way that would cause damage to the arteries was speculative because Terando, the only one present, did not testify that he moved his head with a torquing motion. The ALJ reconsidered the evidence and affirmed the award, noting that he was drawing a reasonable inference from the evidence that Terando moved his head on December 3 in a way that caused the artery damage. He noted that on the evening of December 3 Terando complained about "wrench[ing] his neck." And during the following weekend complained of continuing pain. He visited a chiropractor shortly after that for pain in his neck. The ALJ found this evidence credible and supportive of a December 3 work injury.

¶11      Petitioners then filed this statutory special action appeal.  We have jurisdiction under Arizona Revised Statutes §§ 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

¶12      In reviewing ICA awards, we do not disturb the ALJ's findings unless the conclusions cannot be "supported on any reasonable theory of evidence." *Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987).  We will not disturb the ALJ's resolution of conflicts in the evidence.  *Perry v. Indus. Comm'n*, 112 Ariz. 397, 399 (1975).  When reasonable evidence exists to support an ALJ's factual determinations, this court will not overturn them.  *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000).  Neither will we re-weigh the evidence.  *Id*. at 608, ¶ 21.  If there is conflict in the evidence or if two different inferences may be drawn from the evidence, the ALJ has the discretion to resolve those conflicts and choose either inference; a reviewing court will not disturb that choice unless it is wholly unreasonable.  *Waller v. Indus. Comm'n*, 99 Ariz. 15, 21 (1965).

¶13      It is the claimant's burden to prove the elements of compensability.  *Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, 380, ¶ 7 (App. 2009).  If the work connection to an injury is not apparent to a non-specialist, expert medical testimony is necessary to prove compensability.  *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985) ("Unless a causal connection is clearly apparent to a lay person, the relationship must be established by expert medical testimony.").  We defer to the ALJ's resolution of conflicting evidence and affirm findings if any reasonable theory of the evidence supports them.  *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975).  An award based on conflicting medical testimony will not be disturbed.  *Smiles v. Indus. Comm'n*, 2 Ariz. App. 167, 168 (1965).

¶14      Petitioners argue that the evidence does not link Terando's work activities on December 3 to his stroke because Dr. Ashby could not testify that he torqued his neck on December 3.  In their view, Dr. Ashby would have to be convinced that Terando wrenched his neck to show medical causation.  But this is untrue.  Petitioners are disguising an evidentiary issue as an issue about the sufficiency of medical expert opinion.  Dr. Ashby established medical causation between the action of torquing the neck and the cause of Terando's stroke, the dissection of the arteries.  Dr. Kahn confirmed that such head movement could act as a mechanism of injury to the neck arteries.  Terando was then free to present other evidence that showed he could have torqued his neck on December 3, despite his inability to recall whether he did so.  He presented evidence

that the ALJ found credible that on that day he installed a heavy steel rain hood on a building by steading the hood on his head, then complained of neck pain shortly after, and went to see a chiropractor for neck pain a few days later. Dr. Ashby's testimony provided medical causation that linked Terando's stroke to a torquing motion of the neck, while other testimony provided evidence that Terando probably made a severe neck movement that caused the dissections that set the process for the stroke in motion. Nothing more is required to prove causation.

## CONCLUSION

¶15        The record contains substantial evidence to support the award finding that Terando suffered a work-related injury on December 3, 2021. We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV