NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MIDGE BRITTON, *Plaintiff/Appellant,*

*v.*

MARY NORMAN, et al., et ux., *Defendant/Appellee.*

No. 1 CA-CV 19-0311
FILED 4-28-2020

Appeal from the Superior Court in Mohave County
No. S8015CV201800693
The Honorable Steven C. Moss, Judge

**AFFIRMED**

COUNSEL

Midge Britton, Dolan Springs
*Plaintiff/Appellant*

Mary Norman, Henderson, Nevada
*Defendant/Appellee*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court,
in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1        Midge Britton ("Britton") appeals from the superior court's dismissal of her claim against Mary Norman ("Norman") and the Farmanity Project. For the following reasons, we affirm the dismissal with prejudice.

## FACTS AND PROCEDURAL HISTORY

¶2        Britton operates Road Apple Acres ("RAA"), a nonprofit corporation, from a parcel of property near Dolan Springs, Arizona. At the property, Britton kept a mixture of personal and corporate assets, including eight horses, four goats, and various items of ranch equipment such as custom gates, barrels, troughs, and feeders.

¶3        In 2016, Britton sustained an injury and had to seek medical care. Britton spent a significant amount of time in Phoenix having surgery and completing post-op rehabilitation. While Britton was away, her roommate, W. Singleton, was supposed to care for the animals and the property. Britton testified that, to cover these anticipated expenses, she gave Singleton a debit card, which had approximately $800 per month from social security payments deposited to such account.

¶4        Singleton later told police that after Britton had been gone several months, he was "starting to go broke" and "got fed up with the animals eating better than him." At some point, an animal rescue group, the Farmanity Project, was contacted about the animals.[1] Norman, as the CEO of the Farmanity Project, went to the RAA property and spoke with Singleton, who asked Norman to take and care for the animals. Norman initially told Singleton that her company could not accept the animals because it did not have adequate equipment to house or care for them. Singleton offered to donate corrals and other equipment if Norman would accept surrender of the animals.

¶5        Norman researched Singleton's ability to give away the animals and equipment: she found in the Mohave County recorder's office records that Singleton was an owner of the property and determined from Corporation Commission records that Singleton was a co-incorporator of RAA and was listed as an officer on the company's annual reports. Based

---

[1]        Singleton indicated to police that he was the person who contacted the rescue group. However, Norman represented that a neighbor first contacted the Farmanity Project about rescue of the animals.

on such research, and believing Singleton had the authority to transfer title—as Singleton himself represented—Norman prepared bills of sale, which Singleton signed first electronically and later signed physical copies.[2] Norman took possession of the animals and equipment.

¶6        About a month later, Britton returned to her property and discovered Singleton's arrangement with Norman. Britton filed a report with the Mohave County Sheriff's Office seeking return of her property. After talking to the parties involved and confirming the bills of sale, the Sheriff's Office advised Britton that her matter was a civil issue and she should contact a lawyer.

¶7        In June 2018, Britton filed a civil complaint against Norman and the Farmanity Project seeking an emergency order for a "writ of replevin" to secure the return of her animals and equipment. The parties eventually met for a settlement conference in March 2019. The parties reached an agreement by the end of the day, and the court adopted the settlement agreement.

¶8        After the settlement was reached, however, Britton filed additional documents with the court, and both parties appeared at the court for a previously-scheduled trial setting conference. The court advised the parties that the matter had been removed from the active calendar once the settlement hearing had concluded, but upon leaving the court, Britton commented to court staff that she had not settled the case. The court then issued a minute entry clarifying that "once a settlement is placed on the record, and there is verification of acceptance of the terms of the settlement, then the same is binding upon the parties." The court then reinvested jurisdiction in the settlement judge "to resolve any and all issues with respect to the settlement of this case."

¶9        On April 22, 2019, the settlement judge again met with the parties. After testimony by both Britton and Norman, the court found that "all previous conditions of this settlement agreement have been met" and "each party has complied with the terms of the settlement agreement[,]

---

2        Britton disputed the authenticity of the signatures; however, the superior court noted that electronic signatures "are not as precise as handwritten signatures." In addition, the court stated that it reviewed Singleton's physical signatures in comparison with Singleton's driver's license and found "[t]he signatures of the [hard copy] Bills of Sale are very much those of Mr. Singleton."

specifically the Defendant has returned the property agreed upon." The court then dismissed the matter with prejudice.

¶10 Britton filed a timely notice of appeal[3] and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## ANALYSIS[4]

### I.    *Settlement Agreement*

¶11 On appeal, Britton asks this court to remand her case so that "an agency of competent jurisdiction" can ensure retrieval of her "stolen" property and animals. She seeks compensation for the animals that died while out of her care, extraction (at Norman's expense) of any of her animals that were adopted to third parties before the settlement agreement was made, and a criminal "conviction . . . incarceration & fines" against Norman. Britton's arguments on appeal largely mirror her arguments before the superior court, contending that Singleton did not have authority

---

[3]    We temporarily stayed this appeal to allow the superior court to issue a signed order with a certification of finality pursuant to Arizona Rule of Civil Procedure ("Rule") 54(c). In response, the superior court issued an order clarifying and amending its April 22 order to include the necessary finality language, following which, we reinstated the appeal.

[4]    Although it appears Britton made some effort to comply with the Rules of Civil Appellate Procedure as mandated by the Arizona Supreme Court concerning the organization and content of briefs by including some of the necessary headings, we note that her opening brief does not contain a statement of the facts of her case, nor does it contain clearly delineated arguments supported by citations of legal authority or references to the record. *See* Ariz. R. Civ. App. P. ("ARCAP") 13(a). Britton's reply brief, which "must be strictly confined to rebuttal of points made in the appellee's answering brief," is similarly noncompliant. *See* ARCAP 13(c). In addition, although generally compliant and much more readable, we note that Norman's answering brief also lacks any citations to the record. *See* ARCAP 13(a)-(b). Based on the lack of compliance with ARCAP 13, we could dismiss the matter outright; however, in our discretion, we address the arguments presented by the parties to the extent we understand them. *See* ARCAP 25.

to dispense with her property, that Singleton's signatures were invalid, and that there were no legally binding bills of sale.

¶12        In response, Norman argues that the parties entered a valid settlement agreement, which fully and fairly resolved all issues. Norman further contends that she has fully complied with the settlement agreement.

¶13        Interpretation of a settlement agreement is a question of law that we review *de novo*. *Burke v. Ariz. State Ret. Sys.*, 206 Ariz. 269, 272, ¶ 6 (App. 2003). An agreement between parties is binding if "it is made orally in open court and entered in the minutes." Ariz. R. Civ. P. 80(a)(2). As our supreme court has made clear, "[t]he settlement of a controversy is valid and binding, not because it is the settlement of a valid claim, but because it is the settlement of a controversy." *Abbott v. Banner Health Network*, 239 Ariz. 409, 413, ¶ 12 (2016) (quoting *Brecht v. Hammons*, 35 Ariz. 383, 389 (1929), *disapproved on other grounds by Ariz. Pub. Serv. Co. v. S. Union Gas Co.*, 76 Ariz. 373 (1954)). The court further clarified that as long as a "settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties, and determine what is right." *Id.*

¶14        Here, the superior court found there was a valid settlement agreement between the parties, entered into in good faith, and Britton does not challenge the settlement agreement on appeal.[5] The agreement is binding on the parties, as the settlement judge read the terms of the agreement in open court before both parties and adopted the agreement in a minute entry following the settlement conference. In assuring the parties understood the agreement, the following exchange took place:

> [Settlement Judge]: Did the Court accurately state your agreement for this record?
>
> [Britton]: Yes, sir.
>
> [Settlement Judge]: And upon this agreement being complied with, have you agreed that this matter will be dismissed with prejudice?
>
> [Britton]: Yes, sir.

---

[5]        Aside from three references to the settlement conference, neither Britton's opening brief nor her reply brief address the settlement agreement at all.

[Settlement Judge]: Are you entering into that agreement of your own free-will?

[Britton]: Yes, sir.

[Settlement Judge]: Has anyone used any force or threats of force against you to have you enter into that agreement?

[Britton]: No.

[Settlement Judge]: Are you willing to accept that agreement in complete and total satisfaction of all claims currently pending before this court?

[Britton]: Complete, but not satisfied totally, but yes.

[Settlement Judge]: I'll ask it again. Are you willing to accept this agreement in complete satisfaction of all claims currently pending before this court?

[Britton]: Yes.

¶15        "An agreement of compromise, like any other contract, may be avoided or set aside for fraud, deceit, or mistake." *Phillips v. Musgrave*, 23 Ariz. 591, 594 (1922); *see also Pac. W. Constr. Co. v. Indus. Comm'n*, 166 Ariz. 16, 19 (App. 1990) (stating a claimant may seek to set aside a settlement agreement by proving "duress, mental incompetency, fraud, misrepresentations or mutual mistake of fact"). Although Britton appears to argue fraud and deceit in connection with Singleton's original agreement with Norman, and perhaps with regard to Norman's business practices, Britton fails to argue—let alone reference any facts—showing any fraud or mistake in connection with the terms of the agreement or her decision to enter into the settlement agreement. As the settlement conference transcript makes clear, Britton accepted the terms of the settlement "of [her] own free-will" and "in complete satisfaction of all claims currently pending" before the court.

¶16        According to the terms of the agreement, Norman was to return to Britton the three horses still in Norman's possession, along with the remaining ranching equipment. "[I]n consideration for these promises,

[Britton] has agreed to give up her personal claims to five Mustangs, the four goats, and the balance of the equipment not specifically identified." The parties also agreed that they would not reach out to or initiate contact with any law enforcement or other investigatory agencies in connection with the settled matter.  When Britton later stated to superior court staff that there was no settlement, the court met again with the parties and confirmed that Norman had "complied with the terms of the settlement agreement" and "returned the property agreed upon."  After receiving full performance and the benefit of the settlement agreement, Britton cannot now seek additional compensation from Norman in excess of the agreement.  The confirmed settlement agreement between the parties disposed of all claims currently pending before the superior court; accordingly, we affirm the superior court's dismissal of the action with prejudice.

>    II.    *Notice of Change of Judge*

**¶17**         Britton also appears to challenge an order from the superior court denying her notice of change of judge for cause.[6]  Britton argues the judges were biased against her and, based on comments regarding the unreadability of her court filings, that they insinuated she had diminished mental capacity.

**¶18**         A denial of notice of change of judge may only be challenged by special action relief.  *Taliaferro v. Taliaferro*, 186 Ariz. 221, 223-24 (1996).  As such, Britton may not now challenge the subject order.  Moreover, even if we were able to review such an order, we discern no bias.  Our review of the record leads us to agree with the conclusions of the subject order: first, that the trial judge "patiently and repeatedly [told Britton] to prepare her pleadings pursuant to the rules so that they are legible and understandable," and "[d]espite [Britton's] failure to significantly change her approach to the pleadings," the judge continued to read pleadings and

---

[6]         On April 8, 2020, Britton submitted an additional motion asking this court to take action against the superior court judges who handled her case, alleging misconduct, suppression of evidence, obstruction of justice, and various other claims.  Britton requests this court "audit" the judges' experience in cases involving "livestock law" and also requests this court remand to "an agency of competent jurisdiction" to pursue "dis-bar proceedings" against the judges.  Putting aside the fact that we see nothing in this record to support such allegations, we do not have jurisdiction to conduct either requested action.  *See* A.R.S. § 12-2101; *see also* Ariz. Const. art. 6.1, § 3.  Accordingly, we deny Britton's April 8 motion.

make decisions on what he did understand; and second, that the settlement judge "treated the parties fairly."

¶19 Further, to the extent that Britton argues the judges were biased based on their denial to admit certain evidence or based on rulings not in her favor, we again discern no bias. "The trial court is granted discretion in deciding to admit or exclude evidence." *Maxwell v. Aetna Life Ins. Co.*, 143 Ariz. 205, 213 (App. 1984). "A judge's legitimate exercise of judicial discretion cannot be the basis of the bias and prejudice required for a change of judge for cause." *Mervyn's v. Superior Court*, 179 Ariz. 359, 362 (App. 1994).

### III. Waiver

¶20 Finally, Britton makes a variety of other undeveloped arguments throughout her brief, which arguments are raised for the first time on appeal. She also asserts she has "newly discovered evidence which would alter [the] outcome" of the case "if [it] went to trial."

¶21 In general, this court will "not consider issues, even constitutional issues, raised for the first time on appeal." *Englert v. Carondelet Health Network*, 199 Ariz. 21, 26, ¶ 13 (App. 2000). In addition, "[t]his court is not the appropriate forum for resolving factual disputes," and so we will not consider new evidence on appeal. *Kessen v. Stewart*, 195 Ariz. 488, 495, ¶ 26 (App. 1999). Moreover, we reiterate that this case could not go "to trial" based on "newly discovered evidence" because the parties have already entered a valid settlement agreement. *See supra* ¶¶ 13-16.

## CONCLUSION

¶22 For the foregoing reasons, we affirm the superior court's dismissal of the matter with prejudice.



AMY M. WOOD • Clerk of the Court
FILED: AA